GENTRY v. RICHMOND, &c., R. R. COMPANY.

1. EVIDENCE.—In action to recover damages for injury done to land by the breaking of a culvert, testimony of the price for which adjacent land sold four years afterwards, and testimony of a witness, who had but slight after-acquired knowledge of the land, was competent.

2. INJURY TO LAND—MEASURE OF DAMAGES—CROPS.—In such an action, claiming damages only for injury done to the land, the measure of damages is the value of the land before and after the injury. While the value of the crops made might aid in estimating the value of the land, the loss of crops cannot be considered in fixing the amount of damages.

3. CASES CRITICISED.—This case distinguished from Hammond v. Port Royal, &c., Railway Company, 15 S. C., 10, and Devereux v. Champion Cotton Press Company, 17 Id., 66.

4. EXCEPTIONS—RECORD.—A ground of appeal dismissed, because based upon a ground unsupported by the record.

5. IBID.—An exception simply alleging error "in refusing the motion for new trial," cannot be considered on appeal.

6. CHARGING JURIES—LIMITING RECOVERY.—The action being to recover damages to land above by reason of an embankment erected in 1881, and also the damages to land below by reason of the breaking of the embankment in 1886, the trial judge erred in instructing the jury that in estimating the damages, they could go back only to 1886.

Before HUDSON, J., Spartanburg, October, 1891.

This was an action by L. Miles Gentry against the Richmond and Danville Railroad Company, to recover damages for injury to land. On the cross-examination of plaintiff, while on the witness stand, he was asked at what price he had sold the land, above the factory, to the Beaumont Mills in 1890. Objection to this question was overruled. J. H. Montgomery, a witness for defendant, testified that he had seen the land frequently for

ten or twelve years; that he had gone to see it six months before the trial, and again on the day before, and that not more than a quarter of an acre had been damaged. Objection to this testimony was overruled.

The judge being requested to charge that "no damages can be allowed in this action for any injuries done to plaintiff six years before the summons in this case was issued, to wit, before the 13th day of February, 1884," charged: "The meaning of it is, that you cannot go back beyond that. That is correct, and you have no cause to go back that far. The embankment broke in 1886."

The judge further charged, *inter alia*, as follows:

Now, you are to be the judges of the fact whether negligence was exercised in the erection of these culverts and embankments. If you come to the conclusion that it was negligently done, then the plaintiff here is entitled to recover damages for the injury done by reason of that flood. We are talking about the south side, where the flood is said to have washed up a part of the ground and covered other parts with sand. What damage? The depreciation of value in the land is the measure of the damage, the injury done to that land. Having regard under the evidence to the uses and purposes to which the land was put, how much was the land worth before the freshet came, and then how much was it worth after the freshet and after this flood, and the difference in the value would be the measure of the injury done to the plaintiff, and upon that you can calculate interest up to the present time according to the proposition laid down here. Now, you are to be governed by the evidence as to what that land was worth before the freshet and what it was worth afterwards—what it was worth in the condition in which it was left by the great bursting of the culvert and that embankment.

I will explain to you why I say that. It is not necessary that I should explain that, because I give that to you as a rule, and you take it; but the reason of the rule, so that it will address itself to your own good common sense. Suppose that the plaintiff had been deprived entirely of the land, what is the measure of damage? The value of the land. Suppose the

land has simply depreciated, been injured partially, what is the measure of damage? The extent of the injury. Now, if you were to allow estimate of crops as to what the plaintiff might have made from that time up to this time, the crops that he might have made before and the crops which he might have made, you will see at once that you could not get anything tangible; you could not tell whether he would have cultivated his land as well one year as another, whether he would have used manure one year and no manure another, whether the season one year would be good and the season another would be bad, what the expense in making the crop was one year and what the expense in making the crop another year, and whether he incurred unreasonable expense or not. All those matters are so indefinite, so intangible, that you could not get hold of them; and furthermore, if you were to estimate on that principle, it is possible that you might. under the evidence, give more than the whole land was worth. So that all you are to take into consideration is the value of the land before and the value of the land after the injury, and the difference—the depreciation, in other words—is the damage.

The jury found a verdict for $105 in favor of plaintiff, who moved for a new trial, and, upon its refusal, appealed to this court.

*Messrs. Bomar & Simpson,* for appellant.

*Messrs. Duncan & Sanders,* contra.

February 15, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This action was commenced in February, 1890, for the purpose of recovering damages alleged to have been done to plaintiff's property by the defendant company. In the complaint, three causes of action are stated: 1st. Because the defendant so negligently constructed a culvert, under an embankment where the railroad runs through plaintiff's land, as that the water on the north side of the road was backed up on plaintiff's land, so as to render the same almost worthless; and, further, that, owing to

the improper and insufficient construction of said culvert, the plaintiff's land on the south side of the railroad has been so washed and covered with sand as to greatly impair the value of said land.    2d.  Because plaintiff's land has been injured by fires originating from sparks escaping from defendant's loco-motives, or from other sources, for which defendant company is liable.    3d.  For removing a fence which plaintiff had built for the purpose of enclosing his pasture land, whereby he could not keep his cattle confined therein.

It seems from the evidence that the embankment and cul-vert were originally constructed in the year 1881, and that in May, 1886, during a freshet in the stream over which the road crossed on said embankment, the culvert was washed out, and the plaintiff's land on the south side of the railroad was washed and covered with sand—to what extent, was one of the ques-tions of fact in the case.

From the judgment rendered in the cause the plaintiff ap-peals upon the following grounds, alleging error as follows: "1st.  In requiring the plaintiff to testify what he received for other lands near the lands damaged, sold by him long after the freshet in 1886, and in holding such evidence competent.    2d. In allowing the witness, J. H. Montgomery, who had never examined the land until the trial, and did not go over it then, to testify that he only saw one-fourth of an acre that had been damaged by the freshet.    3d.  In holding there was no evidence to sustain the plaintiff's third cause of action, and in granting a non-suit as to the same.    4th.  In holding and charging the jury that, in estimating the damage to plaintiff, they could not take into any consideration the loss of any crops from the land, but that the only measure of damages would be the difference between the value of the land immediately before and after the freshet.    5th.  In instructing the jury that, in estimating the damages, they could only go back to 1886—the time the em-bankment broke—thus cutting them off from any opportunity of giving damages for injury done to the land above the em-bankment before it broke.    6th.  In refusing the motion for a new trial."

Passing by, for the present, the third and sixth grounds of

appeal, it will be observed that the others raise three general questions: 1st. Whether there was error in the rulings as to the admissibility of the testimony of the plaintiff and Montgomery. 2d. Whether there was error in regard to the measure of damages. 3d. Whether the Circuit Judge erred in restricting plaintiff's right to recover to such damages only as were sustained after the embankment was broken in May, 1886.

As to the first question, we do no not think that there was any error of law either in receiving the testimony of the plaintiff above referred to, or that of Montgomery. While it was very true that such testimony was not calculated to throw much light upon the material inquiry in the case, and might have been entitled to but little weight, yet it certainly was competent, and it was for the jury alone to consider whether it was of any value at all, and if so what weight should be attached to it. The material inquiry being, how much the land was damaged, its comparative value before and after the disaster occurred to which the injury was attributable, afforded a good test; and to determine this, it was clearly admissible to show what adjacent lands had actually sold for, as that would afford *some*, though perhaps very little, evidence, owing to the rise in the price of lands, and perhaps other causes, of the value of the land in question both before and after the freshet. So, too, the testimony of Montgomery, though based upon a superficial examination of the land made some time after the injury had been done, and, therefore, not entitled, perhaps, to much weight, was at least *competent;* and that is all we have to consider.

The second question is really the most material question in the case. In considering this question, we must bear in mind that there is no allegation in the complaint that any crops growing upon the land were either injured or destroyed by the backing of the water on the land on the north side of the railroad prior to the washing out of the culvert, or upon the land on the south side of the railroad when the freshet occurred; but the only allegation is, that *the land* itself was injured by both of these causes. So that the only inquiry was, how

much the land was injured by either or both of these causes. The true test of this would be the difference in the value of the land before and after the injury was sustained; and that, as we understand it, was the measure by which the jury were instructed to determine the amount of the damages. While it may be true that one of the elements entering into an estimate of the value of land used for agricultural purposes, would be the crops which it would be susceptible of yielding (and testimony as to the crops was received for this purpose), yet it by no means follows, that, in a case like this, the value of the crops, which might have been made upon the land but for the injury done to it, could be considered in estimating the amount of damages. For, besides the fact that there is no allegation in the complaint of any damage sustained by loss of crops, either present or prospective, it seems to us that damages resulting from a loss of, or injury to, crops which might have been made, are altogether too remote and speculative, depending upon too many uncertain contingencies, to be allowed in a case like this. See *Livingston* v. *Exum*, 19 S. C., 223; *Sitton* v. *Macdonald*, 25 *Id.*, 68; *City of Chicago* v. *Huenerbein*, 85 Ill., 594; s. c. 28 Am. Rep., 626. In 5 Am. & Eng. Enc. L., 36, the rule is stated in these words: "In actions for injury to real property, where the injury is done to the realty itself, the measure of damages is the difference in the value of the land before and after the trespass, or, in some cases, the amount necessary to restore the property to the condition in which it was before the trespass was committed."

The cases of *Hammond* v. *Port Royal, &c., Railway Company*, 15 S. C., 10, and *Devereux* v. *Champion Cotton Press Company*, 17 *Id.*, 66, cited by appellant's counsel, we do not think in point. In the former case, the only point made by the appeal, so far as the question of damages was concerned, was whether the Circuit Judge erred in instructing the jury that they could find damages done by the original company from whom the defendant company bought the railroad before the sale. There was nothing in the charge, or the requests to charge, which called for any decision of the question whether the value of crops that might have been made upon the land

should enter into the estimate of the amount of damages, and, therefore, anything said upon that question in the opinion was clearly *obiter dicta*.  In the other case, the Circuit Judge refused to charge that the amount of rents which might have been received could enter into the estimate of the damages, and his action in this respect was affirmed by the Supreme Court.  So that the case of Devereux is rather against than in favor of appellant's contention.  To avoid misapprehension, however, we desire to add, that we must not be understood as saying that in no case could rental value enter into the estimate of damages.  For if the owner of real estate leases it for a term of years to a good tenant at a stipulated rent, and the tenant is forced to abandon the lease by reason of the injury done to the property, then the loss of rent, being a direct result of the injury, and the amount thereof not being speculative or uncertain, we suppose that in such a case the amount of rent lost might be included in the estimate of the damages.

Recurring, then, to the third ground of appeal, it is only necessary to say that we see nothing in the "Case" which can afford a basis for this ground.  It does not there appear that any motion for a non-suit was granted, or even made.  On the contrary, the jury were instructed that they might, if satisfied of the facts, give damages under the third cause of action.

As to the sixth ground of appeal, this court has so often held that such a ground cannot be considered here, that we do not deem it necessary to repeat what has been so often said.

We think, however, that the fifth ground of appeal is well taken.  The action having been commenced in February, 1890, the plaintiff had a right to recover any damages which had accrued within the six years next preceding that date; and it was, therefore, error to instruct the jury that they need not go back beyond 1886, as that was the time when the embankment was broken.  Such an instruction was, no doubt, correct so far as the damages to the land on the south side of the railroad were concerned, but it was clearly erroneous so far as the damages done to the land on the north

side of the road were concerned; for those damages being due to the backing of the water on plaintiff's land, by reason of the embankment, probably accrued before the breaking of the embankment. For this reason, therefore, the case must go back for a new trial.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.