## PERRY v. JEFFERIES.

1. PLEADINGS—CAUSE OF ACTION.—Complaint alleging entry on lands,
cutting down and removing timber therefrom, and injury thereby to
lands, fixing the value of the timber and the injury to the lands
separately, states only one cause of action.

2. EVIDENCE—AGENT—TRESPASS.—It is competent to show acts of
parties trespassing, and verbal notice to quit, and afterwards that
they were agents of defendant.

3. IBID.—IBID.—Error of admission of instructions by land owner to
his agent as to posting notices forbidding trespassing, is cured by
agent afterwards stating what he did.

4. IBID.—NOTICES.—SECONDARY EVIDENCE of notices forbidding tres-
passing properly admitted, as there was sufficient evidence of loss of
originals.

5. IBID.—VALUE OF LAND.—LITIGIOUS CHARACTER of plaintiff, and
value of land in question, cannot be shown by evidence as to another
suit between plaintiff and another party.

6. IBID. — TRESPASS — CROSS-EXAMINATION — DAMAGES — NONSUIT.—
Where parties have agreed on a dividing line between lands, and
one afterwards sues the other for damages for trespassing before
location of line, it is competent for defendant to show that the lands
trespassed on were claimed by him before location of line to elimi-
nate from his acts malice, wilfulness and wantonness charged, and
where a trial Judge first denies this line of cross-examination of
plaintiff's witness, and afterwards admits his error, he should
require plaintiff to restore the witness for cross-examination; but
this error is cured here by defendant putting up the witness, and
there being other evidence on same point preventing nonsuit.

7. IBID.—WOOD.—On question of value of wood cut from lands, wit-
nesses may base their estimate of amount cut from quantity cut and
measured on adjoining lands.

8. IBID.—TRESPASS.—Where a defendant alleges in his answer that he
has not since settlement of boundary line trespassed beyond same,
plaintiff may show other acts of trespass than one sued on.

9. IBID.—HARMLESS ERROR.—If it be error to refuse on cross-examina-
tion a question asking if defendant was not a witness against plain-
tiff in another suit, it is cured by permitting defendant to state the
fact.

10. IBID.—HEARSAY.—Statement of a witness to another party is hear-
say, unless used for contradiction.

11. IBID.—BOUNDARY LINE.—After parties have agreed on dividing line

by deed, no evidence of true line as claimed by one party is admissible.

12. TRESPASS.—Party in possession of lands, whether as life tenant, under fee conditional or fee simple, can maintain action for trespass and cutting timber.

13. DAMAGES—TIMBER.—CHARGE illustrating that the method of calculating damages to land by cutting and hauling off timber is the value of the timber in its natural state, is not a charge on the facts.

14. TRESPASS.—A person not in actual possession of land, but entitled to immediate possession, can maintain action for trespass.

15. IBID.—DEFENSE.—Honest belief that a man is cutting wood from his own land, is no defense to an action for trespassing on the lands of another.

Before HUDSON, special J., Cherokee, November, 1900. Affirmed.

Action for trespass by Elizabeth Perry against Samuel Jeffries. The following is the record as to what transpired as to the loss of notices forbidding trespassing:

"Q. Mrs. Perry, you stated awhile ago in your testimony that you notified Mr. Jefferies to quit cutting the timber, did you have these notices put up on the land? Ans. Yes, sir. I also gave Mr. Jefferies one of them. Q. What did those notices contain? (Objected to.) The notices are the best evidence. Court: That is right. Mr. Bell: This has been five years ago and it is impossible for us to produce them. Court: You have to prove it. Mr. Hall: Mrs. Perry, can you get one of those notices? Ans. No, sir; I don't know that I can, but I have witnesses. Mr. Hall: The notices are lost, can we not give the substance of them? Mr. Jefferies: You have not proven that they are lost yet. Q. Would it be possible for you to get one of those notices, Mrs. Perry? Ans. I don't know, sir. Q. You know whether any of them are in your possession or not, don't you? Ans. I don't think we have any of them. Mrs. Perry, just state to the jury what was the substance of those notices? Mr. Jefferies: There has not been sufficient proof of the loss of them. She said that she don't know whether she could find them or

not. She has not proven even that she has looked for them. Mr. Hall: What became of those notices, Mrs. Perry? Ans. Torn down and thrown away and lost. Q. You don't know where those notices are? Ans. No, sir. Q. Now, Mrs. Perry, give us the substance of those notices? Ans. I don't know whether I can or not; but it was to stay off and not to trespass."

From judgment for plaintiff, defendant appeals on following exceptions:

"1. Because the Court erred in allowing the writness, Elizabeth Perry, to testify about the cutting of timber by certain parties without first proving that they were the agents or employees of the defendant.

"2. That the Court erred in allowing the witness, Elizabeth Perry, to testify what she told the parties who were cutting the timber on her alleged land, there being no proof that they were the agents or employees of the defendant.

"3. The Court erred in allowing the witness, Elizabeth Perry, to testify what she had told her son to do in the way of putting up notices on the land and what he had Mr. Webster to do in the premises, the same being hearsay evidence.

"4. The Court erred in allowing the witness, Elizabeth Perry, to give the contents of written notices, it being respectfully submitted that sufficient proof of the loss of such notices had not been given.

"5. The Court erred in holding that the evidence of a suit previously brought by this plaintiff against the carpet mill for damages amounting to $1,500 to this same tract of land had nothing to do with the present suit. The error complained of being, that anything that might go to show the litigious character of this plaintiff or the value of the land injured would be competent to argue to the jury in this case.

"6. That the Court erred in not allowing defendant's attorney to cross-examine the witness, R. O. Sams, fully as to the boundary and lines of survey made by him. The error complained of being, that the defendant was precluded

and prevented from showing that the line up to which he had cut was really his own land, although he may have subsequently given it up to the plaintiff in order to avoid litigation.

"7. That his Honor erred in not allowing the defendant to show by the evidence of the witness, R. O. Sams, that the land cut over was really at the time of the cutting his own land or the land of any other person than that of the plaintiff. The error complained of being that this was a suit for wilful and malicious trespass, the title of the plaintiff being denied by the answer of the defendant, and the effect of such ruling being to preclude the defendant even from showing mitigation of damages; and it being the rule, it is respectfully submitted to this Court, that the defendant would have the right to prove the title to the land at the time of the cutting in himself or any other person than the plaintiff, notwithstanding the fact he may subsequently have surrendered the land to the possession of the plaintiff by way of compromise in order to avoid litigation.

"8. That the Court erred in refusing to allow the defendant to ask the witness, R. O. Sams, the question as to whether or not the line of Samuel Jefferies' land as contained in the deed from H. G. Gaffney to Samuel Jefferies and others called for the line on the land of the plaintiff as first surveyed by him, and up to which the defendant claimed to have cut. The error being that even if the land over which the cutting was done should be proven to be the plaintiff's land, still the defendant might show peaceable possession thereof in mitigation of damages.

"9. The Circuit Judge erred in refusing to allow the defendant to prove the boundary of defendant's land adjacent to plaintiff's by the witness, R. O. Sams. The error complained of being that this was a cross-examination, and defendant should be allowed to make out his whole case if possible by plaintiff's witnesses.

"10. That the Circuit Judge erred in ruling out the deed from H. G. Gaffney and others to Samuel Jefferies, offered

in evidence and proven by the witness, R. O. Sams, to show the true line in mitigation of damage. The error committed being that defendant might show by any competent evidence location and possession in mitigation of damages.

"11. That the Court erred after modifying his rulings to some extent in not requiring the plaintiff to put up the witness, R. O. Sams, that he might be cross-examined by the defendant. The error complained of being that his Honor forced the defendant to use witness, R. O. Sams, as his own witness, when all of the evidence could have been procured by cross-examination of said witness.

"12. That his Honor erred in allowing the witness, T. J. Stacy, to testify how much timber there was on the land alleged to have been cut over, forming his opinion from the timber which grew on adjacent lands and not on the land itself. The error complained of being (a) that his opinion is inadmissible; (b) if admissible at all, it should be given upon the timber which grew on the land alleged to have been cut over and not from that of adjacent land.

"13. Because the Court erred in allowing the witness, D. W. Cooper, to testify the amount of the timber cut off of the land in dispute, forming his idea from 'ordinary lands,' and not from the land in question. The error complained of being (a) that it would be a mere matter of opinion which, it is respectfully submitted, was not competent; (b) if the witness should give his opinion at all, it should be from the facts and circumstances and knowledge he had of the timber growing on the land in question, and not that on 'ordinary lands;' (c) especially is this true, when the witness did not know whether or not the land pointed out to him was the land in question.

"14. The Judge erred in allowing the witness, George Moss, to testify he 'supposed it was the plaintiff's land now,' over the objection of defendant's counsel. The error complained of being that the witness was merely giving his opinion or supposition of the ownership of land when the deed proving the location of the land was already in evidence.

"15. The Court erred in allowing the witness, George Moss, to testify what was said to him by the son of the plaintiff, without ever connecting him previously or subsequently with any agency from the plaintiff, and saying which son it was that gave him the notice. The error complained of being that it was hearsay evidence.

"16. The Court erred in allowing witness, Ed. McDonald. to testify, over the objection of defendant's attorney, as to wood which he cut in 1893. The error complained of being that it was before the time alleged in the complaint at which the cutting was done, and against which, if alleged, the statute of limitation could have been pleaded.

"17. Because the Judge allowed the witness, W. H. Perry, to testify for the plaintiff, over the objection of the defendant, as to other acts of trespass than those alleged in the complaint. The error complained of being that such evidence would unjustly influence the jury in giving a verdict against the defendant for the trespass alleged in the complaint, and would prejudice and bias the jury against the defendant.

"18. Because the Court erred in refusing to allow defendant's attorney to ask the witness, M. C. Perry, the question whether or not the defendant in this action, Samuel Jefferies, was not a witness for the carpet mill in the suit between this witness and the carpet mill; the object of the question being to show the motive of the bringing of this suit against this defendant and to discredit his testimony.

"19. Because his Honor erred in not granting defendant's motion for a nonsuit, it being respectfully submitted to this Court, that under a proper construction of the deed by which the plaintiff held that she had only a life estate in the property, and that all of the injury proven was injury done by the cutting of timber on the place over which she had no control and which in no wise injured her possession, and there being no proof of damage or injury to her possession before the Court.

"20. Because the Court erred in not allowing the witness,

Mrs. M. K. Aders, to testify as to a conversation had with a son of the plaintiff before that son had been put upon the stand, when he had allowed the plaintiff to testify as to statements made by the plaintiff to hands and laborers of the defendant before proving or showing any agency or connection between the defendant and his alleged said hands and employees.

"21. Because his Honor erred in ruling, when R. O. Sams was put up as a witness for defendant, that he could only testify as to where the lines had been run, and in not ruling that the defendant could prove that all of the land cut over was really his. The error complained of being, it is respectfully submitted to this Court, that the defendant had a right to prove the ownership of the land which he cut over in himself, notwithstanding the fact he may have subsequently given up the land to the plaintiff in order to avoid litigation. And especially is this true inasmuch as the defendant admits that under the compromise, the land is the property of the plaintiff; but it is further respectfully submitted to this Court, that he had a right to show the true ownership of the land at the time that he committed the alleged trespass.

"22. Because the Court erred in ruling that, when the question was asked of the witness, R. O. Sams, 'Is that or not the plat of the entire piece of Mrs. Perry's land?' being objected to by the plaintiff, 'You cannot ask the witness a question that will go to invalidate the compromise line that has been run.' It being respectfully submitted to this Court, that the question asked this witness did not tend to invalidate the compromise line as run, but merely to show where the true line was at the time of the cutting or alleged trespass, going to show the defendant's right to do the cutting.

"23. Because the Court erred in overruling the following question, propounded to witness, Samuel Jefferies: 'That compromise line that was run, did it or not settle all differences between you and Mrs. Perry?' The error complained of being that it is set up in the answer that it was a settlement of all such differences, and there being no reply to the

answer, the defendant had the right to prove the allegations of his answer.

"24. Because his Honor erred in charging the jury as follows: 'That boundary line the parties are bound by, bound by as the line between them, because they have writing binding them.' The error complained of being, it is respectfully submitted, is because it precluded from the mind of the jury the original right of the defendant to cut timber from the land as his own land, or as land in which he was in lawful possession by reason of the first survey.

"25. Because the Court erred in charging the plaintiff's fourth request, as follows: 'It is not necessary for a plaintiff to show that he was in actual and exclusive possession of the lands in question where trespass is alleged at the time of the trespass, but it is sufficient if he proves that he was entitled to possession then.' The error complained of being (a) that the plaintiff should be in actual possession; (b) that such a charge is a practical admission to the jury that the plaintiff has shown a right of possession, notwithstanding the fact the defendant had been precluded from showing such right of possession; (c) if such charge should be correct, then it is respectfully submitted to the Court, all the previous rulings of his Honor refusing to allow the defendant to show the original, true and correct line as between the plaintiff and defendant, are incorrect.

"26. Because his Honor erred in not charging the defendant's first request, as follows: 'The deed under which plaintiff in this action holds gives her only a life estate, and in considering the question of damages, she could recover only such damages as have been caused to her life estate. The error complained of being, that his Honor should have construed the deed under which plaintiff held, and charged the jury that she could recover only so much damages as her interest would entitle her to.'

"27. Because his Honor erred in refusing to charge defendant's fourth request, as follows: 'If the defendant should be in possession, although he might be under a mis-

taken belief that it was his property, this will prevent a recovery.'

"28. Because his Honor erred in refusing to charge defendant's sixth request, as follows: 'The plaintiff in this action holds only a life estate under her deed, and could not cut the timber from the property herself, only for the purpose of protecting or preserving the property, and can, therefore, recover only such damages as she proves to her possession.' The error complained of being the deed under which plaintiff held really gave her only a life estate, and that his Honor should have construed the deed as requested.

"29. Because his Honor erred in refusing to charge the defendant's seventh request, as follows: 'The plaintiff in this action having only a life estate in the land, can recover no damages for any permanent injury to the land, unless it was an injury to her possession; and if it should be an injury to her possession, then the measure of damage would be actual injury or damage to her possession.' The error complained of being that under a proper construction of the deed by which the plaintiff held, she had only a life estate in the property, and by refusing to charge the request, his Honor left it open for the jury to recover the entire injury to the property, as if plaintiff held in fee simple.

"30. Because the Court erred in refusing to charge defendant's tenth request, as follows: 'If the Court should hold that the deed under which plaintiff claims gives her an interest in the land equal to that of her children, then the defendant requests the Court to charge the jury that the plaintiff can recover no more damages than would be her *pro rata* share in the land, and the measure of damages would be the value of the trees cut from the land, unless the cutting was done in a wilful and malicious manner, without regard to the right of the plaintiff.' The error complained of being that under a proper construction of the deed under which plaintiff held, that she could at least have no greater interest in the land than that of a cotenant with her children, and as such cotenant she could not recover the entire amount

of damages sustained to the land itself in favor of this plaintiff.

"31. Because the Court erred in refusing to charge defendant's eleventh request, as follows: 'If the Court should hold that the deed under which plaintiff claims gives her a fee simple title to the property, then the defendant requests the Court to charge, "The measure of damages would be the value of the trees cut from the land, unless such was done in a wilful and malicious manner and without regard to the rights of the plaintiff?'" The error complained of being that in refusing to charge this request, the Court left it open for the jury to give a greater damage than the value of the trees cut, whether the cutting was done wilfully, maliciously or not.

"32. Because his Honor erred in charging the jury as follows: 'Well, her title has been introduced here by a deed upon the construction of which there is a question—a life tenant under the deed, or a joint tenant with the children, or a tenant in fee. For the purpose of this case, I charge you that whether a life tenant or a tenant in fee, she has a right to bring this action, and to recover of the defendant such damages as she proves of the character alleged in the complaint— that is, the cutting and carrying off of the timber. She has the right to bring action, and she has the right to recover whatever amount of damages, whatever trespass she has established against the defendant.' The error complained of being that in failing and neglecting to construe the deed under which the plaintiff held, and in failing to charge the jury the interest and right of the plaintiff under the said deed, the plaintiff asking for the entire value of the property injured, his Honor left it open for the jury to give to this plaintiff the entire damage to the premises caused by the cutting of the trees, the same as if she were the owner in fee; whereas, it is respectfully submitted to this Court, that the law makes a distinction as to the rights of a tenant for life and tenant in common, or an owner in fee, to recover in such an action as this; and his Honor erred in not

making such a distinction in his charge, and stating to the jury the respective rights of each party or parties in the said class or classes.

"33. Because his Honor erred in charging the jury as follows: 'Therefore, you must value it as if it were there before removal, or value it as it stood there before it was cut, because that was the plaintiff's property.' The error complained of being that this was a charge upon the facts.

"34. Because the Court erred in overruling defendant's motion to require plaintiff to elect, and in not requiring the plaintiff to elect, which cause of action she would go to trial on."

*Mr. J. C. Jefferies,* for appellant, cites: *The deed under which plaintiff claims gives her only a life estate:* 51 S. C., 557. *And life tenant cannot sue for waste or cutting timber:* 2 McC. Ch., 141; 12 Am. Dec., 106, note. *One tenant in common can sue and recover only his share of damages:* Sedg. on Dam., sec. 75; 36 L. R. A., 519. *Judge ought not to have left the deed to be construed by the jury:* 25 S. C., 216; 26 S. C., *160; 31 S. C., 378. *Defendant should have been permitted to show that he had title to disputed lands:* 59 S. C., 131. *Defendant is entitled to make out his entire case by cross-examination if he can, and if prevented, a new trial will be granted:* 25 S. C., 318; 30 S. C., 490; 29 S. C., 578.

*Messrs. Duncan, Sanders, Hall, Hart & Bell,* contra, cite: *Possession to maintain:* 26 Ency., 580, 584, notes a, 655; 1 Hill, 404; 16 S. C., 465; 6 Wait on Actions, 65, 74. *As to cutting timber:* 26 Ency., 676, note 2. *Who entitled to damages:* 6 Wait on Actions, 81. *By boundary deed defendant is estopped from showing the lands belonged to him:* 2 Jaggard on Torts, 669.

July 24, 1901. The opinion of the Court was delivered by MR. JUSTICE POPE. This action came on for trial at the

special term of the Court of Common Pleas for Cherokee County, on the 13th day of November, 1900, before the Hon. J. H. Hudson, sitting as special Judge, and a jury. A verdict was rendered for the plaintiff for the sum of $75. After entry of judgment thereon, the defendant appealed therefrom on thirty-four grounds. The report of the case will set out these grounds of appeal. We will, in passing upon the grounds of appeal, classify the same.

First. That the Circuit Judge erred, as pointed out by the thirty-fourth ground of appeal, in not requiring the plaintiff to elect which cause of action she would go to trial upon— the appellant claiming that the complaint set up two causes of action. In her complaint in the first article thereof, the plaintiff alleged that she was the owner of a certain tract of land containing about sixty acres, which was separated from lands owned by the defendant by an agreed boundary, under the hands and seals of the plaintiff and defendant, which agreement was set out by a copy thereof attached to the complaint. The second article is as follows: "2. That during the months of August, September, October, November and December, 1894, and the months of January, February, March, April and May, 1895, and especially during the winter and spring of 1895, the defendant wilfully, unlawfully and maliciously, and against the express protest and wish of the plaintiff, and after notice from the plaintiff not to do so, entered upon the lands of the plaintiff hereinbefore described, and cut or had cut therefrom a large quantity of timber, of oak, poplar and other valuable varieties, of the aggregate value, as plaintiff is informed and believes of $500, and sold, used, destroyed or otherwise disposed of the same, without paying to the plaintiff the value thereof, notwithstanding the plaintiff had repeatedly notified and requested the defendant to desist from said trespass, thereby greatly injuring said land of plaintiff to her loss and damage in the sum of $800." The third article names the persons who were in the employ of the defendant when the alleged trespasses were committed. We agree with the Cir-

cuit Judge that the cause of action alleged by the plaintiff to exist as against the defendant is only one, and, therefore, overrule this ground of appeal.

The next group of exceptions complain that improper testimony was admitted, against the defendant's objection: (a) That Mrs. Elizabeth Perry, as complained in the first exception, was allowed to testify that certain parties cut her timber, without first proving that they were agents of the defendant. Of course, if this testimony was not afterwards connected by proof of the agency of such parties for the defendant, it would not have been competent. But it was afterwards fully connected with the defendant. Therefore, there was no error. The *first* exception is overruled.

(b) That Mrs. Perry, the plaintiff, testified as to *what she told* these agents of defendants while they were cutting timber on her land. There was no error here, because Mrs. Perry had the right to testify as to what she told these witnesses, for the knowledge of the agent was the knowledge of the principal, and to have this knowledge plaintiff had to speak, or had the right to speak. So the second exception is overruled.

(c) That Mrs. Perry had no right to testify what she told her son, as her agent, to do as to putting up certain notices, and what he had Mr. Webster to do. This was without harm to the defendant, for the son afterwards stated what he did as to the notices under his mother's direction and as her agent. The third exception is overruled.

(d) That Mrs. Elizabeth Perry had no right to testify as to the contents of written notices, because insufficient proof was given as to their loss. We think that the proof of the loss of the notices was necessary before their contents could be given by way of secondary evidence. But the loss of these written notices was established; hence secondary proof as to the contents of such written

notices was competent. · The fourth exception must be over-ruled.

The next exception (the fifth) relates to the refusal of the Circuit Judge to allow any evidence as to a suit between the plaintiff against the carpet mill for damages to be given in evidence in the cause at bar. We are at loss to conceive what connection a suit for damages for coloring the waters in a branch on plaintiff's land by the carpet mill could have with the cause at bar. To admit such testimony would open the door to the retrial of the suit of Mrs. Elizabeth Perry against the carpet mill. Such testimony was inadmissible. Let the fifth exception be overruled.

We will next consider the sixth, seventh, ninth, tenth and eleventh exceptions, relating as they do to the witness, R. O. Sams. It seems that Mr. Sams was a surveyor, and as such had not only run the dividing line between the plaintiff's and defendant's lands, but had also run a previous line betwixt them. The Circuit Judge was in earnest to keep out of the testimony in this cause any statements by witnesses as to what differences had been settled by the plaintiff and the defendant by a deed signed, sealed and delivered by them some time in May, 1895. The deed must speak for itself. The following is a copy of such instrument:

"State of South Carolina, Spartanburg County. Articles of agreement, made this the thirtieth day of May, in the year of our Lord one thousand and eight hundred and ninety-five, between Mrs. Elizabeth Perry (wife of A. J. Perry), party of the first part, and Samuel Jefferies, party of the second part, both of Gaffney City, State and county aforesaid. Witnesseth, that whereas a difference of opinion has arisen between the party of the first part and the party of the second part as to the boundary line of the lands of said parties, and between said parties, said lands lying in or near the incorporate limits of said town, Gaffney City; and whereas said parties are desirous of deciding upon and es-

tablishing a permanent line between themselves, their heirs, executors, administrators and assigns, and thus avoid any litigation respecting the same.    Now, know all men by these presents, that in consideration of the matters and things hereinbefore expressed, and in order to settle in a friendly manner all existing differences respecting said line, it is mutually covenanted and agreed by and between said parties that the following described line shall forever hereafter be taken, accepted, known and established as the boundary line separating the said lands of said parties : Said line beginning * * * It is mutually agreed that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties hereto.    In witness whereof the parties to these presents have hereunto set their hands and seals, at Gaffney City, S. C., the day and year first above written.    Elizabeth Perry (seal).    Sam'l Jefferies (seal). Signed, sealed and delivered in the presence of J. D. Jones, J. E. Webster, B. S. Lipscomb."

The parties, plaintiff and defendant, having thus solemnly settled what was the dividing line between their respective adjoining lands, it was very natural for the trial Judge to hold the parties to their own deed, and it was altogether proper.    But there was one standpoint from which testimony as to the lands butting upon this dividing line might be pertinent, and that was because the plaintiff in her complaint had charged the defendant with a malicious and wilful disregard of her rights as affecting lands adjoining this dividing line; therefore, to negative this allegation of wanton, malicious and wilful disregard of plaintiff's right, the defendant might show that up to 25th day of May, 1895, he had claimed the lands trespassed upon as his own.    The trial Judge saw this distinction after he had ruled this testimony incompetent, and on coming into Court after recess and on the same day, he announced that the defendant was entitled to have Mr. Sams testify as to the possession of these lands, so far as negativing malice, &c.    But on the reassembling

of the Court, the illness of defendant was announced and the trial was postponed until a future day in the same week. When, on Friday, the trial was resumed, the plaintiff declined to restore the witness, R. O. Sams, for a new cross-examination, and subsequently the defendant had to place him on the stand as his own witness, when he was allowed to testify fully as to this matter. These exceptions suggest error as follows: "(6) That the witness, R. O. Sams, should have been allowed to testify fully as to boundary and lines of survey made by him, as defendant wished to show that the line up to which he had cut timber was really his own land, although he may have subsequently given it up to plaintiff." We do not think this exception correctly points out the difficulty as to this testimony. It was not competent to show anything that would tend to weaken this boundary line. The solemn deed of the parties as to this boundary line shut off all inquiry except as we have heretofore pointed out. All this witness could have been allowed to testify on this point was as to the claim of defendant, under his own deed and prior to 26th May, 1895.

(7) This exception is just about, in effect, what we have just stated to be the purport of six.

(8) This exception is practically the same as six and seven.

(9) This exception is very nearly akin to six, seven and eight.

(10) This exception is about the same as the others. We think the afterthought of the trial Judge was more in consonance with justice than his first ruling. But inasmuch as he corrected his error in the manly way he did in the afternoon of the day of his first ruling, he thereby corrected any error.

The eleventh exception complains that the witness, R. O. Sams, was not restored to the witness stand as plaintiff's witness, so that the defendant could have had the benefit of his testimony on a cross-examination of such witness. We think the defendant is right in his contention that this wit-

ness should have been restored to the witness stand as plaintiff's witness. The error by which a cross-examination was denied the defendant was that of the trial Judge. The trial Judge had control of the machinery of his Court. It was, therefore, in his power to have had the plaintiff recall this witness as his own for the purpose of a cross-examination by the defendant. And if it had been so that the cross-examination of this witness would have negatived all proof as to the *locus in quo* of the trespass, a nonsuit might have been the result. But there are two reasons why this exception cannot stand. (1) The witness was restored for full examination by the defendant, and he thus obtained the full benefit of his testimony. (2) There was other proof as to the dividing line and the trespasses of the defendant. No nonsuit could, therefore, have followed. This exception is overruled.

The next group of exceptions embrace the twelfth, thirteenth, fourteenth, fifteenth grounds of appeal. These relate to the giving of opinion as to the amount of the wood cut by the agents of the defendant upon the land of plaintiff. The defendant errs in supposing that the testimony objected to was the giving of an opinion by these witnesses; each one spoke of his own knowledge of the land and the timber growing thereon at the time of the alleged trespass. Their estimate of the amount of the timber actually cut was from a comparison of the yield of cords on contiguous acres, which were cut and measured by cords with the timber cut down on plaintiff's lands which was not actually measured by the witnesses. There is nothing to complain of in allowing these witnesses to make this estimate by comparing the cords actually made with what the same timber on adjoining lands yielded in cords. It is seldom that mathematical accuracy can be reached in such matters; as near to this as human intelligence can come in estimates, is the next best method in such cases. So far as the opinion of the witness, Moss, when asked as to whose lands he cut and hauled timber from, that the lands be-

longed to the plaintiff, is concerned, there could be no objection to his statement that such lands were on the side of the agreed line admitted to be on Mrs. Perry's side of the said line.    These exceptions are overruled.

As to the sixteenth exception, relating as it does to the testimony of the witness, Ed. McDonald, who stated that he cut the timber in the year *1893*, it cannot avail the defendant.    The matter of dates is difficult, after the lapse of years, to speak with accuracy.    The fact of cutting the timber and by whose direction was the object; the correct date could be given by this witness or by any other witnesses "who knew the exact date."    This exception is overruled.

The seventeenth exception relates to an alleged error of the trial Judge in permitting the witness, W. H. Perry, to testify to other acts of trespass than those set up in the complaint.    When it is remembered that the answer of the defendant distinctly set up, "That since the said boundary line had been established, defendant has duly recognized the same and has never gone beyond the same," this testimony was material.    This exception is overruled.

As to the eighteenth exception, relating as it does to the alleged error of the trial Judge in declining to allow the defendant to ask plaintiff's witness, M. C. Perry, whether the defendant was not a witness for the carpet mill in the suit brought by the plaintiff against it, if error at all, was harmless error, for the reason that the defendant, Samuel Jefferies, was allowed to state the fact. The exception is overruled.

As to the twentieth exception, which complains that one of defendant's witnesses was not allowed to testify as to the answer given by one of the sons of plaintiff in a conversation with the said son.    It may be stated that it was not offered to contradict such son as a witness.    It was, therefore, purely hearsay, and on that account was not admissible.    The exception is overruled.

We will next dispose of the twenty-first and twenty-

second exceptions, relating as they do to the witness, R. O. Sams. It seems that the defendant, in his cross-examination of this witness, sought to obtain his testimony on the matter of his survey of the lands of the plaintiff so as to reach the established boundary between her lands and those of the defendant. The Court ruled that, as between the plaintiff and defendant, their deed was conclusive between them. In this matter, the trial Judge was right, for that solemn instrument between these parties settled the matter between them. These exceptions are overruled.

Exception nineteenth complains that the trial Judge erred in not granting a nonsuit, "it being respectfully submitted to this Court, that under a proper construction of the deed by which the plaintiff held, she had only a life estate in the property, and that all of the injury proven was injury done by the cutting of timber on the place over which she had no control, and which in no wise injured her possession, there being no proof of damage or injury to her possession before the Court." This deed thus in controversy was as follows : *"Know all men by these presents,* That I, Marion Amos, of the county of Spartanburg, in the State aforesaid, in consideration of the natural love and affection which I have for my daughter, Elizabeth Perry (wife of A. J. Perry, of Madison County, in the State of Georgia), have granted, given and released, and by these presents do grant, give and release unto the said Elizabeth Perry, all of that piece or parcel of land (here describing land in dispute). Said land is estimated by me at $400, and is considered as an advancement to her for that amount, to be deducted out of her part of my estate in its final settlement after my decease, together with all and singular the rights, hereditaments and appurtenances to the said premises belonging or in any wise incident or appertaining. To have and to hold, all and singular the premises before mentioned unto the said Elizabeth Perry and her children after her forever. And I do hereby bind myself, my heirs, executors and administra-

tors, to warrant and forever defend all and singular the said premises unto the said Elizabeth Perry and her children after her against me and my heirs, and all others lawfully claiming or to claim a part thereof." The trial Judge denied the motion but did not enter into an extended construction of the deed. He certainly reached the conclusion that Mrs. Perry and her children were not made tenants in common, but that Mrs. Perry was by the terms of the deed certainly entitled to the full and complete possession of said lands, as a tenant for life, or in fee conditional, or in fee simple. He did not say which, nor will we. The trial Judge certainly held that if the defendant interfered with the plaintiff's possession of that land covered by the deed, the plaintiff had a right of action therefor. Her children were only to have said lands *"after her."* We agree with the trial Judge, but we might as well remark just here that the only construction of this deed to which the defendant was entitled was as to the plaintiff's right of possession. As to these matters we may have more to say hereinafter. This exception is overruled.

The next group of exceptions comprise the twenty-fourth, the thirty-second and the thirty-third grounds of appeal.

(a) The twenty-fourth complains that the trial Judge in charging the jury said: "That boundary line the parties are bound by; bound by as the line between them because they have a writing binding them," and thus shuts out of the minds of the jury "the original right of the defendant to cut timber from the land as his own land, or as land of which he was in lawful possession by reason of the first survey." The trial Judge had at defendant's request charged the jury: "Possession or ownership of another portion of a tract of land is not sufficient to maintain this action, unless ownership of the particular portion sued upon is shown." He had also charged the fifth request: "If the defendant was in actual possession and was under the honest belief that it was his property, the jury cannot find punitive damages against him." With these

distinct charges to the jury we cannot say that there was
any error in the language of the charge as covered by this
exception.   It is overruled.

(b) This exception (32) quotes certain language of the
trial Judge as to the deed under which the plaintiff held her
land, wherein he charged the jury that the plaintiff, whether
as life tenant or tenant in fee, has the right to bring
this action, &c., and then alleges that the trial Judge
erred in not construing the deed so that it might be
learned if the trial Judge meant to charge the jury whether
the plaintiff could recover the entire damages resulting from
cutting the timber and hauling it away or only a part, and if
a part, what proportion of the whole damages.   It is evi-
dent that the trial Judge meant in his charge to the jury to
say that the plaintiff, under the deed, was entitled to recover
not a part but the whole of the damages resulting from cut-
ting and hauling away the timber from the land in contro-
versy.   We have before, in treating of the nonsuit, consid-
ered the deed.   This exception is overruled.

(c) The thirty-third ground of appeal complains that the
trial Judge charged upon the facts when he stated to the
jury, "Therefore, you must value it as if it were there before
removal, or value it as it stood there before it was cut,
because that was the plaintiff's property."   This
Court has frequently called attention to the danger
of injustice to the trial Judge in extracting only a part of
the charge.   Counsel do not mean to do this, but probably
in the hurry of the preparation of exceptions this is made
the result.   So we will give the charge itself on this point.
"It is necessary by the preponderance of the evidence to your
satisfaction that she develops the fact that she is the owner
of the land trespassed upon.   That the defendant did tres-
pass upon it, did cut and carry off the timber therefrom; and
she must satisfy you by the preponderance of the testimony,
also, as to the question of trespass and the value of the
timber cut and carried from it.   Now, gentlemen, you must,
in estimating that, you must estimate the value of that timber

as it was cut, the year it was cut, what was the value of it. If you view it as cord wood, why you must find the net value of it, the number of cords, the value as the timber lay upon the ground, because she is seeking to recover the value of timber cut and carried away; the value would be as it was cut. Now, what expense she would necessarily incur in reducing it to cord wood, would have to be taken into consideration as the value, if your finding is on that score. Therefore, you must value it as if it were there before removal, or value it as it stood there before it was cut, because that was the plaintiff's property. For instance, take the standing timber, then you would have to estimate from the evidence the part cut and the value standing, or the trees felled, then you must ascertain the part cut and the value of those cut. Now, to illustrate what I mean from that: if you should find, for instance, if you should find that there were ten cords, trees cut enough to make ten cords, or twenty cords, or any special number of cords of wood on an acre of land cut up, then you would have to estimate the net value of those cords, value of the cords of wood, as if she had them cut and hauled off and sold. I believe, gentlemen, that is about the mode, manner to reach the actual value of timber cut and hauled away. If you find that they were logs, saw logs, you will estimate what kind of timber, the number of feet of timber, those logs would make, estimate the amount of transporting them to the mill and converting them into planks. I think that is the proper mode. So if you find that the defendant trespassed, whether he did or not, is the question, on the lands of the plaintiff: if he did, you must ascertain to what extent, just how much timber he cut and carried away, and the value of it as it was there in its unconverted shape." It is thus apparent from the context of this part of the charge of the trial Judge that he was laying down to the jury the methods by which they must be governed in doing exact justice to these parties. No charge upon the facts was had. The words excepted to were a part of the

rule for estimating damages. This exception is also overruled.

The next group of exceptions embraces the twenty-fifth exception, where error is alleged in charging one of plaintiff's requests, to wit: "It is not necessary for a plaintiff that he was in the actual possession of the lands in question when trespass is alleged at the time of the trespass, but it is sufficient if he proves that he was entitled to possession." This charge of the Circuit Judge is sound law, for otherwise, fee simple ownership might result or avail in nothing as against a bare trespasser. This exception is overruled.

The next group of exceptions relates to the requests to charge presented by the defendant, and which were declined by the Circuit Judge. They embrace the twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first. We will pass upon them in their order.

(a) The request was: "The deed under which plaintiff in this action holds gives her only a life estate, and in considering the question of damages, she could recover only such damages as have been caused to her life estate." The deed showed that plaintiff was certainly entitled to the possession of her lands during her life. This being so, as against third persons she had the right to maintain her right of possession as against the world. Whenever any one trespassed upon these lands by cutting down or removing timber therefrom, the supposed life tenant had a right of action against such trespasser. The appellant possibly confounds the rights of third persons as to life tenants with the rights of remaindermen as to life tenants. The latter can restrain waste, but they cannot recover from the life tenant the property itself. This exception is overruled.

(b) The twenty-seventh exception complains that the trial Judge should have charged the jury, as per fourth request: "If the defendant should be in possession, although he might be under a mistaken belief that it was his property, this would prevent a recovery." The Cir-

cuit Judge was right in refusing this request to charge. It is not sound law that a *mistaken belief* as to ownership in a trespasser will entitle him to go unharmed by the law for an actual invasion of the property rights of another. When the title and right of possession of land is in one man, any other man must at his peril invade such lands, no matter what he honestly believes. This exception is overruled.

(c) The twenty-eighth exception is covered by what we have held as to the twenty-sixth exception, and is overruled for the ground therein given.

(d) The twenty-ninth exception is already covered in this opinion, and is overruled.

(e) The thirtieth exception is covered by the views we have already announced as to the effect of plaintiff's deed, and is overruled.

(f) The thirty-first exception is overruled. The Court did not err. He had already charged the rule as to actual damages, and also as to vindictive damages, and he had already charged that to recover damages it was not necessary for plaintiff, under her deed to the land, to be held as the owner in fee simple. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.