## 9350

### MILLER v. PARR SHOALS POWER CO.

#### (88 S. E. 374.)

1. EVIDENCE—VALUE—OTHER LAND.—In an action for damages to plaintiff's land from backwater caused by damming of a river, where plaintiff claimed that the land was worth $100 an acre, testimony of the plaintiff, on cross-examination, that his father had previously sold adjoining land for $20 an acre, was admissible as tending to show market value.

2. APPEAL AND ERROR—REVERSAL FOR HARMLESS ERROR.—The error of the Court in refusing to admit testimony will not work a reversal of judgment unless the error is prejudicial.

3. APPEAL · AND ERROR—REVIEW—HARMLESS ERROR.—In an action for damages to plaintiff's land from backwater caused by damming of a river, where other witnesses testified to the value of land in the general locality, the improper exclusion of plaintiff's testimony, on cross-examination, as to the price received by his father for adjoining land, was harmless.

Before MEMMINGER, J., Lexington, February, 1915. Affirmed.

Action by J. W. Miller against the Parr Shoals Power Company. From a judgment for the plaintiff, the defendant appeals.

· *Messrs. Elliott & Herbert* and *C. M. Efird,* for appellant. The former cite: *As to practice on cross-examination:* 80 S. C. 220; 65 S. C. 247; 68 S. C. 470; 77 S. C. 50. *Judicial discretion:* 47 S. C. 488. *Cross-examination:* 7 Metc. 266; 91 S. C. 141; Wigmore, Ev., sec. 1367; 99 S. C. 63; 124 Pa. St. 560; 68 Atl. 829; 162 Mass. 568; 41 N. E. 227; 194 Mass. 250; 131 N. C. 287; 33 Am. St. Rep. 682; 33 Fed. 415; 138 Fed. 536; 104 Ill. App. 507; 99 Am. Dec. 543; 21 Me. 484; 204 Mo. 21.

*Messrs. Wallace & Barron* and *Thurmond, Timmerman & Callison,* for respondent, cite: *As to damages:* 95 S. C.

FOOTNOTE.—As to evidence of value of lands condemned, see notes in 3 L. R. A. 83, and 43 L. R. A. (N. S.) 985 to 991.

273; 42 S. C. 409; 73 Md. 268; 25 Am. St. Rep. 595; 84 S. C. 317; 67 S. C. 181; 49 S. C. 122; 3 Sutherland, Damages, 416, 417; 26 S. C. 480; 8 A. & E. Enc. of L. 716-723; 93 S. C. 426; 83 S. C. 292, 293; 82 S. C. 275; 17 S. C. 574; 61 S. C. 336; 74 S. C. 559.

March 25, 1916.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Tort for damage to lands from the backwaters of a branch of Broad River. Verdict for the plaintiff for $900. Appeal by the defendant.

History: The plaintiff is a farmer and resides in Lexinton county upon a tract of land embracing 60 acres, and he has resided there 24 years. The land does not abut Broad River. It lies on a tributary of the river, and the waters of the river are forced back up that tributary and on the land. Below that land the defendant erected, in 1914, across Broad River, a dam, for the purpose of ponding water to create power to generate electricity. The aforementioned branch empties into Broad River above the dam, and the allegation is the dam forces the water of the river back up into the branch. The two wrongs of the defendant alleged by the plaintiff were: (1) The sobbing of his land by backwater; and (2) the generation of mosquitoes and fogs from a like cause. The sobbing of the land, it was contended, rendered it unfit for cultivation; and the generation of mosquitoes and fogs, it was contended, rendered the home unhealthy and unfit for habitation.

Only one question was argued before us, and an expression of opinion on that question alone is asked for. The question arises out of the exclusion of certain testimony. The plaintiff was a witness in chief, and he was being cross-examined by the defendant's attorneys. The plaintiff had testified in chief that this 60 acres was worth, before the erection of the dam, $100 per acre. On the cross-examina-

tion the plaintiff testified his father had sold to the defend-ant company 245 acres which adjoined the 60 acres in dispute, but "a different tract." The plaintiff also testified that his father had also sold 4½ acres of adjoining land for a price less than $100 per acre; and the attempted cross-examination was about what the father got for that 4½ acres. Here is the record:

"Q. And in this deed he conveyed out of that tract 4½ acres— Mr. Timmerman: We object to that. The Court: You cannot put that in. The rights of adjoining owners is not relevant. Mr. Herbert: This is on cross-examination, and I am trying to get at the value of the land in that community. The Court: This is a particular transaction you are delving into, and no one knows the particular reason for selling a certain piece of land. Mr. Herbert: I would like to ask him if he knows that his father got a certain price for that land, and if there is any reason why that land should be sold at any lower price than his land. The Court: That is not competent. You may give the market value of land in that neighborhood from which the jury can base their opinion. You cannot go into particular transactions. Each transaction may have reasons backing it as to why a party sells a piece of land for a certain price. Mr. Herbert: I would like to ask this witness this—and I do not wish to invade your Honor's ruling, but I would like to ask him, and I will not put the question so as to get it before the jury without your permission—if he does not know that his father sold that land, which he says is an adjoining land, at a certain price, and if there is any reason why this land, the land of his father, should be sold any lower than his land. I think it would be for the jury to say whether he is putting the proper valuation on it. The Court: I do not think, under the decisions, we can go at it in that way. It would depend largely on hearsay evidence anyway."

The appellant's counsels thus state their exact contention, to wit:

"Defendant's attorney was seeking to show by the plaintiff by cross-examination (ff. 77-83) that J. D. Miller, the father of the plaintiff, had owned the adjoining tract, and a short time before the flooding of plaintiff's land had conveyed a portion of it at a much lower price, and his Honor declined to allow defendant's attorney to cross-examine the plaintiff on this point. We will discuss later on the peculiar relevancy of this testimony and why it was vital to defendant's case."

And again:

"It would have been of immense benefit to the defendant in establishing the real value of the land if it could have gotten an admission from the plaintiff himself that his own father had sold a portion of an adjoining tract, a few years previously, of land of the same general character, at $20 per acre, and it will be noted from the record that defendant was not endeavoring to prove this entirely by hearsay evidence, as his Honor said, for the defendant had actually the deed to show it."

The whole of appellant's argument is about the right of free cross-examination of a witness when it relates to facts in issue.

We think the practice of cross-examination is not so much involved in the inquiry as is the competency of testimony. The question is: How may the present value of a particular parcel of land be proven? The value of a thing rests generally in opinion, and the opinion rests on many and varying factors. In the instant case, for instance, the lands, overflowed and sobbed, might have one value for agriculture; another for the ponding of water upon; another in connection with a homestead; another if part of a very small or very large parcel; another if timbered or untimbered. The actual sale of land does not always indicate its true value, if indeed such value may be known with scientific accuracy. Generally, the best available proof of what land is worth is the opinion of those who know enough of the

factors, which must be a basis of the opinion, to express their judgment about it. The exact issue in every such case is: What is the value of the particular parcel of land? As a measure for that, it is not always safe to get the value of a parcel near by, unless the factors in each case are alike; and the determination of that side issue is likely to obscure the main issue. Nevertheless it is competent, and such has been the practice in the Courts of this State, to allow a comparison of the value of two parcels, where the circumstances of them are alike, to aid a jury to measure aright. See *Kean* v. *Landum,* 72 S. C. 556, 52 S. E. 421; *Gentry* v. *Railroad,* 38 S. C. 284, 16 S. E. 893; *Perry* v. *Jefferies,* 61 S. C. 292, 39 S. E. 515.

Our conclusion is that the testimony of the plaintiff as to what his father sold adjoining lands for ought to have been allowed; or at least a sufficient inquiry ought to have been made about such sales to ascertain if the same would enlighten the jury in the instant case.

But the refusal of the Court to admit the testimony need not work a reversal of the judgment unless the defendant has been prejudiced by the exclusion. That principle of law is too well established to render necessary the citation of authority. We are clearly of the opinion there was no such prejudice. The plaintiff sued for $6,000; the jury gave him $900; it ignored the plaintiff's estimate of value, which was $100 per acre. There was at most less than 5 acres overflowed and sobbed. The real damage to the plaintiff, established by the testimony, was to the 60 acres as a place of residence. The testimony tended to show that the backwater from Broad River created fogs and odors and mosquitoes, which made the plaintiff's family of six people sick, and thus rendered the house unfit for occupancy.

Besides this, the defendant introduced three witnesses, Wilson, Mahaffey, and Maher, who testified to the value of the land in that community; and they all fixed the value at

about $20. The witness, Wilson, testified to the value of his own land. The witness, Mahaffey, testified to "land in that general locality." The witness, Maher, testified to "the value of land in that community." So that the jury had the benefit of testimony as to the value of other lands than the land in issue, and that is all the witness, J. W. Miller, could have sworn to.

The judgment of the Circuit Court is affirmed.