HUNTER v. HUNTER.

1. EXECUTOR—LIMITATION OF ACTIONS.—FINDING of Circuit Judge that *all* debts of testator were barred at time of payment by executrix, reversed. An executor under certain circumstances may pay debts barred after death of testator.

2. LIMITATION OF ACTIONS.—BURDEN OF PROOF is on party setting up bar of the statute to prove it clearly.

3. SUBROGATION.—Where lands are impressed with the burdens of (1) testator's debts, and (2) the education and support of his children, and the executrix sells under defective power, the purchasers are entitled to be subrogated to the rights of the testator's creditors, and of the children, in the amounts in which the purchase money of the lands directly or indirectly went to the payment of such debts, and the education and support of his children; and it is error to dispossess them of the land until such amounts are ascertained and refunded to them.

4. RES JUDICATA.—Question whether purchase money of lands were applied to payment of testator's debts, is not *res judicata* here.

5. SECONDARY EVIDENCE.—There being some evidence here of the loss of original notes by fire, secondary evidence of their contents properly admitted.

6. RENTS—RENTAL VALUE.—Party in possession of land by purchase under defective power from executrix and trustee, should only be required to account to the *cestuis que trustent* for rents and profits received and not for rental value.

7. ADVERSE POSSESSION of land by purchaser of executrix and trustee under defective power, cannot be set up against *cestuis que trustent* during minority of some of them.

Before BENET, J., Laurens, August 13, 1901.    Modified.

Action by Eugene S. Hunter, Saml. M. Hunter *et al.* against Nannie W. Hunter, A. Y. Thompson *et al.* The following is the Circuit decree:

"In pursuance of the order of the Supreme Court, all of the defendants, except Nannie W. Hunter, amended their answer so as to set up the claim that they were entitled to be subrogated to the rights of such creditors of S. M. Hunter as were paid out of the proceeds. The case then came on for trial before this Court on October 19th, 1900. I have carefully considered the testimony that was introduced in this case, and I find that these defendants have failed to make good this claim. It is true, that they introduced evidence going to show that certain debts of S. M. Hunter, deceased, were paid out of the proceeds, but all of these were, at the time of their payment, barred by the statute of limitations. They were promissory notes, which S. M. Hunter had signed as surety some time previous to the year 1876, whereas, they were not paid until the year 1885, and the testimony offered by these defendants shows that in the meantime S. M. Hunter had made no payments upon these notes, or otherwise acknowledged the same as subsisting liabilities. The executrix was not permitted to pay any debts which are barred, and if she has paid any debts out of any funds lawfully in her hands, it would have been a devas-

tavit. These debts, as to the devisees under the will of S. M. Hunter, were all discharged under the law, and could not have been asserted against them. No payments made by the principal upon these notes would arrest the statute of limitations as to the surety. *Walters* v. *Craft,* 23 S. C., 585. The acknowledgment by the executrix of these debts as liabilities would not bind the estate, and any payment made by her upon such debts would not be liable in an accounting with them. This position is fully sustained by the following authorities: *Bird* v. *Howze,* Speer E., 255; *Gilliland* v. *Caldwell,* 1 S. C., 197; *McKinlay* v. *Gaddy,* 26 S. C., 573.

"These defendants have asked to be put in the place of those creditors who were thus paid and be substituted to the rights of such creditors; but it appears from their own showing that these creditors were not entitled, as against the plaintiffs, to subject the land in controversy, and they have, therefore, failed to make good this claim. 24 A. & E. En. Law, 322, Harris Subrogation, 830-833.

"It is, therefore, ordered, decreed and adjudged, that the claim made by all the defendants, except Nannie W. Hunter, that they are entitled to be subrogated to the rights of the creditors of S. M. Hunter, deceased, be and the same is hereby disallowed.

"It now becomes necessary to make such administration order as is proper under the holdings of the Court. Under the decision of the Supreme Court, the deeds made by the defendant, Nannie W. Hunter, purporting to be under a power contained in the will of S. M. Hunter, deceased, did not convey the interests of the plaintiffs herein. But such interest as Mrs. Hunter had in the said lands were transferred to the grantees respectively. The will gave to Nannie W. Hunter the tract of land described in the fourth paragraph, for the term of her life, the proceeds from the rents and the use of the land to be devoted to the support of herself and children, to wit: the plaintiffs herein and to their education. By the deeds so made, Nannie W. Hunter di-

vested herself of any interest in this land, and violated the trust imposed upon her by the will.    It thus becomes necessary to appoint another trustee, who is during her lifetime to hold the legal title of said lands in trust for the plaintiffs herein and for the assignees of Mrs. Hunter's interest.    Inasmuch as no basis for the division of the rents and profits has been furnished the Court, equity will follow the rule of equality, and during the life of Mrs. Hunter will divide the profits arising from the rents and profits of said lands equally among the plaintiffs and the assignees of Nannie W. Hunter, the plaintiffs receiving each one-sixth and the assignees of Nannie W. Hunter together one-sixth.

"It is, therefore, ordered, decreed and adjudged, that the trustee hereinafter to be appointed shall take into his possession all of the lands described in the complaint, and that he shall hold the same to himself during the lifetime of Nannie W. Hunter; that in the exercise of his powers, he shall lease and rent out the said lands, and after paying all taxes, insurance and necessary expenses for repairs, he shall divide the surplus into six equal parts, one part of which shall be paid to each of the plaintiffs or to their assignees, and the other part, to wit: one-sixth, shall be paid to the assignees of Nannie W. Hunter.    The trustee may at any time apply to this Court, at the bottom of this order, for any instructions as to his duties, and for any aid in getting possession of said land.    The one-sixth to which the assignees of Nannie W. Hunter are entitled, shall be divided as follows, to wit: * * *

"It is further ordered, that John F. Bolt, as clerk of the Court, until the further order of this Court, be and hereby is appointed the trustee of said land, and that he be allowed as compensation 2 1-2 per cent. on all amounts collected and 2 1-2 per cent. on all amounts paid out.    The appointment of a permanent trustee is reserved.

"It is further ordered, that the trustee or any of the parties hereto, may apply, at the bottom of this decree, for any

6—63

further order that may be necessary to carry out the terms of this decree.

"It is further ordered, that the defendants herein do account to the plaintiffs for the five-sixths of the rents and profits which they have heretofore received from the said lands, or the value of the use and possession, the portions which they have been respectively holding.

"At the death of the said Nannie W. Hunter, the trustee's duties will terminate, and he is then to turn over the said lands to the plaintiffs or to their assignees."

From this decree the defendants, except Nannie W. Hunter, appeal on following exceptions:

"I. Because his Honor erred in not holding that, under the judgment of the Supreme Court herein, the only question before him was to ascertain what amount of the purchase money of the land paid to Nannie W. Hunter, as executrix, should be refunded to the defendants respectively in possession of the lands, and that they be allowed to retain their respective parts of the lands until their *pro rata* part of the purchase money be refunded to them.

"II. Because he should have held that Judge Watts' findings that the proceeds of sale of the lands were applied to the debts of S. M. Hunter, was a finding unappealed from; that such debts were then subsisting debts against the estate of S. M. Hunter, and that Judge Benet erred in overruling the finding fact of Judge Watts, that the proceeds of sale were applied to valid debts of S. M. Hunter.

"III. Because his Honor erred in not holding that the fundamental fact upon which the right of subrogation is based was *res judicata,* under the findings of fact of Judge Watts, unappealed from, which he found in his decree herein, that the whole of the proceeds of the sale of the lands were applied by the executrix to the payment of debts of S. M. Hunter.

"IV. He erred in holding that all of the debts of S. M. Hunter were barred by the statute of limitations at the time

of their payment by his executrix, Nannie W. Hunter, at time of sale of the land described in the complaint.

"V. His Honor should have held that the burden of proof was upon the plaintiff to show by the preponderance of competent testimony that the debts paid out of the proceeds of the land were barred by the statute of limitations.

"VI. He erred in admitting at the hearing the papers in the case of Samuel F. Vance against Nannie W. Hunter, as executrix, and J. P. Hunter, the same being no record but only hearsay, secondary, and declarations in favor of plaintiffs and alleged copy of promissory note.

"VII. He erred in finding that all of the debts of S. M. Hunter paid by the executrix, Nannie W. Hunter, were promissory notes, which S. M. Hunter had signed as surety previous to 1876; that S. M. Hunter had made no payment on these notes, and never acknowledged the same as subsisting liabilities.

"VIII. Because his Honor erred in not holding that the burden of proof was upon the plaintiffs to show that the debts of S. M. Hunter, paid by the executrix out of the proceeds of sale of the land, matured before the beginning of the statutory period applicable to said debts, and there being no such testimony, his Honor erred in holding that the debts were barred by the statute of limitations.

"IX. He erred in not holding that after great lapse of time, death of witnesses and loss of papers, that public policy required and the law presumes that the settlement of debts by the executrix was based upon valid and subsisting obligations of her testator, such settlement being an official act and prejudicial to her individual rights.

"X. Because he erred in holding that these debts, paid by the executrix out of the proceeds of sale of the lands of testator, were then discharged under the law, and could not have been asserted against the devisees of testator.

"XI. He erred in holding that the testator, S. M. Hunter, was surety on the debts paid by executrix, and that the payments thereon were made by the principal and not the surety.

"XII. He erred in holding that the creditors of S. M. Hunter, whose debts were paid by executrix, had no right to subject the lands of the testator to the payment of his debts, and that these defendants have not shown any right to be subrogated to the rights of such creditors.

"XIII. He erred in not holding that the defendants were entitled to be subrogated to the rights of creditors, whose debts were paid by the executrix out of the proceeds of the sale of the lands of testator, and the individual estate of the said Nannie W. Hunter.

"XIV. He should have held that all the purchase money received by Nannie W. Hunter from the sale of the said lands described in the complaint, were applied to the payment of subsisting debts of her testator, S. M. Hunter, and that these defendants should be entitled to retain possession of their respective portions of said lands until their respective interests of the purchase money be refunded to them.

"XV. He erred in holding plaintiffs are entitled to recover five-sixths of the rents and profits of said lands, and that these defendants, as assignees of Nannie W. Hunter, should be entitled to receive only one-sixth of the rents and profits; while he should have held that the defendants are entitled to receive all the rents and profits of the said land for the natural life of Nannie W. Hunter, as there is no allegation or proof that she had not educated or contributed to the support of the children, as she was the primary object of the testator's bounty, and her support had preference, and because defendants holding under her were entitled at least to one-third of the rents and profits by virtue of the statute of distributions and right of dower.

"XVI. He erred in not holding that the defendants are subrogated and entitled to all the individual rights of Nannie W. Hunter and of the *cestui que trust,* in the said lands and the rents and profits thereof.

"XVII. Because he erred in holding that the plaintiffs are entitled to five-sixths of the rents and profits of the lands, making no allowance for the increased condition of rents.

and profits by reason of improvements made on these lands after sale thereof by the executrix, and for taxes paid thereon.

"XVIII. He erred in appointing the clerk of the Court trustee of the said lands in the place of Nannie W. Hunter, and authorizing said John F. Bolt to take possession of said lands and rent out the same, thereby taking the possession of lands from the defendants without the right of trial by jury.

"XIX. Because he erred in decreeing that the defendants should account to the plaintiffs for the rents and profits received prior to June 30th, 1899, the time of the commencement of this action.

"XX. He erred in holding that the defendants should account for rental value for the use and possession of said lands.

"XXI. That he erred in not holding any or all of the plaintiffs were barred by the statute of limitations from the recovery of rents and profits accruing six years before the commencement of this action.

"XXII. Because he erred in holding that the defendants, S. H. Fleming, Emma S. Fleming, Lula Fleming and Mary Nabors, should account for any part of the rents and profits, they neither now nor have ever been in possession, nor received any of the rents and profits of said lands.

"XXIII. Because he erred in holding that the plaintiffs are entitled to receive rents and profits from the time of the alienation of the land, when the testimony shows that the plaintiffs received education and support from their mother and trustee, Nannie W. Hunter—the effect of this decree being to give the plaintiffs a double portion.

"XXIV. He erred in not holding that the defendants, W. J. Fleming, R. H. Fleming, A. Y. Thompson, W. T. Blakely and W. A. McClintock, have held the said lands openly, notoriously, exclusively and adversely for the period of ten years next preceding the commencement of this action against the said Nannie W. Hunter, holder of the title, and

that the legal title was transferred thereby to the defendants, and that the plaintiffs are barred by the statute of limitations from the recovery of said lands or the rents and profits thereof.

"XXV. Because his Honor should have held that the injunction granted by J. S. Douthit, probate judge of Greenville County, in the proceeding instituted by Nannie W. Hunter to sell said land in aid of personalty to pay debts, and that the injunction granted by Judge Witherspoon in the case of S. F. Vance against Nannie W. Hunter, as executrix, and J. P. Hunter, arrested and stayed the statute of limitations as to all of the debts of the said S. M. Hunter.

"XXVI. Because he erred in not finding that if all the proceeds of the sale of the land were not applied by Nannie W. Hunter, executrix, to the payment of the debts of S. M. Hunter, so much of the said proceeds not so applied were expended by her for her own use and benefit and for the support and education of the children, and that the defendants should be subrogated to the rights of creditors and the *cestui que trusts* to extent of amount so paid and expended.

"XVII. Because his Honor erred in converting the action from its legitimate scope of declaring a trust and appointing a trustee to one for the recovery of land; whereby the defendants were taken by surprise, and prevented from setting up their claim for betterments erected on the premises purchased by them, and in not allowing the defendants an opportunity of setting up said claim for betterments.

"XXVIII. He should have held that the plaintiffs were barred by their laches and prevented by equity from pleading the statute of limitations to the debts of testator paid by executrix.

"XXIX. Because his Honor erred in admitting the testimony of Nannie W. Hunter, on cross-examination, against defendants' objection as to contents of notes, the originals not produced or accounted for."

*Messrs. N. B. Dial, W. H. Martin* and *F. P. McGowan,* for appellants.

*Mr. Martin* cites: *The question of subrogation was passed on before, and such order is binding here:* 17 S. C., 207; 44 S. C., 299. *As to accounting for rents and profits:* 18 S. C., 132. *Purchasers are not bound to see to proper distribution of purchase money:* 21 L. R. A., 44; 24 Ency., 258-9.

*Mr. F. P. McGowan,* cites: *Purchasers can hold these lands without any accounting until put in statuo quo:* 3 Pom. Eq. Jur., sec. 300; 24 Ency., 258; 18 S. C., 123; 24 S. C., 316; 41 S. C., 337. *Only necessary to plead facts upon which subrogation is based:* 8 S. C., 104; 56 S. C., 245; 62 S. C., 40. *Circuit Judge is bound by previous findings:* 17 S. C., 32; 16 S. C., 362. *Evidence at first trial admissible at second:* 44 S. C., 300; 1 Brev., 262; 2 Rich., 119. *One setting up bar of statute must show it:* 29 S. C., 256; 9 Rich. Eq., 429. *When debts of decedent are barred:* Rev. Stat., 2322; 1 McN., 333; 2 Strob., 190; 29 S. C., 257. *Executrix could reimburse herself moneys used for estate:* 12 S. C., 461. *Payment by co-obligor:* 2 Hill, 216; 23 S. C., 278. *Executor not bound to plead statute:* 38 S. C., 496; 2 DeS., 277; 2 Strob. Eq., 288; 4 Rich. Eq., 349. *Creditor could have pursued lands:* 1 Brev., 289; 6 S. C., 356; 18 S. C., 164. *Plaintiffs are barred by statute from recovering possession of these lands:* 4 Rich., 10, 18; 50 S. C., 120. *As to accounting for rents:* 1 Rich. Eq., 27; 10 Rich. Eq., 285; 24 S. C., 255; 14 S. C., 292; 42 S. C., 536; 1 Strob. Eq., 350; 28 S. C., 562. *Defendants should have been allowed to set up betterments:* 43 S. C., 379; 45 S. C., 288; 58 S. C., 547.

*Messrs. Haynsworth, Parker & Patterson,* and *Ball, Simpkins & Ball,* contra. The former cite: *Question not raised below cannot be considered here:* 30 S. C., 284. *Exceptions too general:* 44 S. C., 486; 43 S. C., 99; 51 S. C., 57, 572. *Exception without foundation made below will not be considered:* 30 S. C., 284; 34 S. C., 330. *Right of*

*subrogation:* 24 Ency., 187; Harris on Sub., p. 2; 48 A. St. R., 394; 37 *Ibid.,* 628. *Where original claim is barred, right to subrogation is defeated:* 24 Ency., 129, 257; 40 Cal., 221; 18 S. C., 132; Pom. Eq. Jur., sec. 1300; 2 A. St. R., 328; 1 Story, 478; Spear's Eq., 250; 1 S. C., 198; 60 S. C., 351; 23 S. C., 586. *Where no time is fixed for payment or note is lost, it is payable on demand or in reasonable time:* 18 Ency., 196; 8 Johns., 189; 146 Mass., 20; 1 Ran. Com. Paper, par. 119; 1 Dan. Neg. In., par. 88; Bish. on Con., par. 1437; 119 Mass., 79; Wood on Lim. of Actions, par. 124; 2 McC., 246; Rice, 245; 3 Rich., 182. *Statute continued to run until administration:* 16 S. C., 198.

March 11, 1902.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.   This is the second appeal in this case, the first being reported in 58 S. C., 382, to which reference must be had for a fuller statement of the facts than it is deemed necessary to make here.   For the purposes of this appeal, it will be necessary to recapitulate here some of the more prominent facts which were either undisputed or fully established by the testimony, as follows : The land out of which the various claims set up in this case are to be satisfied originally belonged to Dr. Saml. M. Hunter, who departed this life on the 25th of April, 1883, having first duly made his last will and testament, leaving his wife, the defendant, Nannie W. Hunter, and his children, who are named, as the plaintiffs in this action; that said testator, by his will, devised this land to his wife, Nannie W. Hunter, "for and during her lifetime, to support herself and my children, and to educate my children;" that the said Nannie W. Hunter was the duly qualified executrix of said will, and as such being advised by her father, who is characterized as "an attorney at law of many years experience at the bar," that she had the power so to do, undertook to sell and convey the said land under which sales the defendants (other than Nannie W. Hunter) claim either mediately or imme-

diately; that these sales were made for a full and fair price, and the purchase money was paid to the said Nannie W. Hunter, who, as she said in her testimony at the first trial, applied the whole of such purchase money to the payment of the debts of the testator—her deceased husband—though she varied that statement somewhat at the second trial, as will be hereinafter noted. Under the former appeal, this Court determined that under the proper construction of the provisions in the will of the testator above referred to, the widow took an estate for life incumbered with a trust to apply the same to the support of herself and the children of the testator and to educate said children, without any power to sell the same. And while the Court, in rendering its decision under the former appeal, evidently recognized the rights of the defendants to be subrogated to the rights of the creditors of the testator whose debts had been paid out of the proceeds of the sale of the land, yet as the question of subrogation had not been made *in terms* in the pleadings as they then stood, and was not considered or decided by the Circuit Judge, it was thought best to "remand the case to the Circuit Court, for the purpose of enabling that Court to pass upon the question of the defendants' right to subrogation, with leave to the defendants, if they shall be so advised, to amend their answer by setting up, formally, their right to subrogation." Accordingly, when the case went back to the Circuit Court for this purpose, the defendants availed themselves of the permission given and filed their amended answer, setting up formally their right to subrogation. To this amended answer the plaintiffs filed a reply, in which they claim, "that the alleged debts of S. M. Hunter, deceased, on which it is claimed that Nannie W. Hunter paid the proceeds of the sale of the land in controversy, matured and arose more than "six years prior to the death of the said S. M. Hunter, and that at the time of his death they were barred by the statute of limitations." Under the pleadings as thus amended the case came on for trial before his Honor, Judge Benet, when the testimony taken at the former trial

was offered in evidence, together with other testimony, all
of which is set out in the "Case," and the decree set out in
the "Case" was rendered by Judge Benet, from which the
defendants (other than the said Nannie W. Hunter) appeal
upon numerous exceptions, which are set out in the record.
A copy of this decree and the exceptions thereto will be in-
cluded in the report of this case, by the Reporter.

We do not propose to consider these exceptions *seriatim,*
but will confine our attention to what we consider the con-
trolling questions in the case.    It will be observed that the
Circuit Judge bases his conclusion, rejecting the appellants'
claim to subrogation, solely upon the ground that the
debts of the testator which were paid out of the pro-
ceeds of the sale of the land were *all* barred by the stat-
ute of limitations "at the time of their payment"—*not* that
they were thus barred *at the time of the death of the testator,*
as alleged in the plaintiff's reply, setting up the plea of the
statute.   Now, while it is quite true that an executor would
not be justified in paying a debt of his testator which was
barred at the time of his death, for the obvious reason that
there was *then* no *legal* obligation to pay such debt, yet it does
not follow that a debt which becomes barred *after the death
of the testator* would stand in the same category; for it may
happen, and has happened, that the executor may, with a
view to prevent a sacrifice of the property of his testator, in-
duce the creditor to defer action until some arrangement
could be made for the payment of such debt; and in such a
case a court of equity might well feel justified in allowing
an executor to carry out such arrangement in good faith.
But what is more to the point, we think the Circuit Judge
was clearly in error in saying that *all* of these debts were
barred at the time of their payment; for, with a single excep-
tion (the note of J. C. Hunter, which will be more particu-
larly considered hereinafter), there is no evidence whatever
that any of these debts were barred at the time of their pay-
ment; and certainly no evidence that they were barred at the
time of the death of the testator.    It is true, that there was

testimony tending to show that some, but not all, of the notes
evidencing the debts paid by the executrix, were made before
1876; but how long before, or when they matured, or
whether they were promissory or sealed notes, there was not
a particle of testimony.    Now, when it is remembered that
the time during which the executor is exempted from suit
must be added to the statutory period (*Lawton* v. *Bowman*,
2 Strob., 190), it is far from clear that any of these notes
were barred, unless it be the note of J. C. Hunter, to which
these remarks do not apply, but which will hereinafter be
specially considered.    In addition to this, the rule is
well settled that one who seeks to avail himself of the
benefit of the statute of limitations must assume the
burden of proving the facts necessary to sustain such a
plea—*Moore* v. *Smith,* 29 S. C., 254; and, as is said in
*Yancy* v. *Stone,* 9 Rich., 429, "The party who sets up the
bar of the statute to an otherwise just claim, must prove
strictly that he is entitled to its protection."

Next, as to the J. C. Hunter note; while it is quite true
that this note does appear, from the copy which we find in
the "Case," to have been a promissory note, bearing date
20th June, 1873, and payable one day after date, and, there-
fore, upon its face barred by the statute, yet that note was in
suit, and in the complaint there was an allegation of a pay-
ment made in 1879, within the statutory period; but it was
claimed that this was a joint and several note of J. P. Hunter
and S. M. Hunter, and that such payment was made by J. P.
Hunter and not by S. M. Hunter, and, therefore, did not have
the effect of reviving the debt as against S. M. Hunter,
under the case of *Walters* v. *Kraft,* 23 S. C., 578.    That
case does so hold; but up to the time that decision was
rendered, which was on the 27th of November, 1885, after
the note was paid, it was an unsettled question in this State,
as to the effect of such payment, as may be seen by the opin-
ion of the learned Justice, who dissented in Walters *v*. Kraft.
It may, therefore, be regarded as a compromise of a doubtful
right in a pending suit, and in that way the payment of such

note may be justified.　　But, as there are not sufficient facts before us to enable us to reach a satisfactory conclusion, we leave this particular matter for further consideration by the Circuit Court, to which this case will be remanded for that and other purposes hereinafter indicated.

Appellants' 26th exception makes the point that the Circuit Judge erred in not finding that if all the proceeds of the sale of the land were not applied by Nannie W. Hunter to the payment of the debts of the testator, so much of said proceeds not so applied were expended by her for her own use and benefit, and for the support and education of her children—the plaintiffs herein; and the appellants should be subrogated to the rights of creditors, and the *cestui que trustent,* to the extent of the amount so paid and expended.　The point made by this exception is well taken. If the testimony of Nannie W. Hunter, as given at the first trial, is to be taken as the correct version of the matter, then the undisputed testimony shows that the whole of the proceeds of the sale of the land were applied to the payment of the debts of the testator.　It is true, that when she was examined as a witness at the last hearing, she testified that her testimony at the previous hearing was given hastily, and "after studying it over I remembered it better;" and then proceeds to testify that all the proceeds of the sale were not applied to the debts, but that she advanced her own money to pay some of the debts and used some of the proceeds of the sale in keeping up the farm and making improvement thereon, where the children were supported and were sent to school, for which she paid with her own money.　Indeed, her testimony at the last hearing tends to show that she used the proceeds of sale as if it belonged to her, thinking that she had the right to do so; so that even if her testimony given at the last hearing be accepted as the correct version of the matter, then it is apparent that a portion, at least, of the proceeds of the sale were applied to the payment of the debts of the testator, either directly or indirectly, by replacing the amount of her own money advanced by her for that purpose,

and the balance was applied either directly or indirectly to the support of the family and the tuition of the children.    If so, then the appellants would have the right to be subrogated to the extent of so much of the proceeds of the sale as were so applied.    The doctrine of subrogation, as applicable to this case, rests upon this principle, that where persons have in good faith bought the lands of a decedent and it turn out that the sale is void for want of authority to make it, then, as a matter of equity and good conscience, those who have purchased the property have a right to retain the prop· erty until the amount of the purchase money paid by them, which has been applied to the removal of burdens resting on such property, shall be refunded to such purchasers.    As is said in Freeman on Void Judicial Sales, 51, which is quoted with approval in *Cathcart* v. *Sugenheimer,* 18 S. C., at page 132, and again in the former opinion in this case (58 S. C., at page 394), "If by a sale of the lands of a decedent, his debts are paid and it turns out that the sale is void, the purchaser has the right to be subrogated to the claims which he has by his purchase paid, and he has also the right to retain possession of the property as security for the repayment of the sums to which he is entitled."    Now, this land was subjected to two burdens: 1st. The unpaid *legal* liabilities of the testator; 2d. The support of testator's wife and children, and the education of said children; and, upon the principle above stated, these appellants have the right to retain possession of the same until the amount of the purchase money paid by them, which has been applied either directly or indirectly to the removal of these burdens, has been refunded to them.    From this it follows that the Circuit Judge was in error in requiring the persons substituted as trustee to take possession of the lands in question before it was judicially ascertained whether any, and if so how much, of the purchase money paid by the appellants had been applied to the removal of the above mentioned burdens upon the land, and before the sums so ascertained had been refunded to the appellants; and to this extent exception 18 must be sustained.

Such of the appellants' exceptions as make the point that the question whether the proceeds of the sale were applied to the payment of the debts of the testator, should have been regarded as *res judicata,* must be overruled; for Judge Watts said in his decree that it was unnecessary to pass upon that issue, as he based his judgment exclusively upon the ground that under his construction of the will, the executrix took a life estate in the land, which she had a right to sell, and as she was still living, the action was prematurely brought, and for that reason alone he rendered judgment that the complaint be dismissed, which was reversed by this Court; and this Court certainly did not undertake to pass upon the question whether any, and if so how much, of the proceeds of sale were applied to the payment of the testator's debts; but, on the contrary, remanded the case to the Circuit Court for the express purpose of enabling that Court to pass upon the question of subrogation, which necessarily involved the question which is now claimed to have been already adjudged.

Exceptions 6 and 29, raising questions as to the competency of testimony, are overruled. There was testimony tending to show that the notes of the testator which were claimed to have been paid out of the proceeds of the sale were destroyed by fire, and, therefore, secondary testimony as to their contents became admissible. .

The points made by exceptions 9 and 11 are left open, to be considered by the Circuit Court when carrying out the purposes for which this case will be remanded.

Exception 10 is based upon a misconception of the decree of the Circuit Judge, and cannot, therefore, be sustained.

Exceptions 15, 16, 17, 19, 21, 22, 23, raising questions as to the rents and profits, are left open, for the reason that these questions can better be determined under the decree which will be rendered by the Circuit Court under the order remanding this case for certain purposes; and in this connection we may say that the point made as to betterments by

exception 27 is also left open, in order that such point may also then be passed upon.

As to the exception 20, we do not understand that the Circuit Judge held the appellants accountable for the "*rental value*" of the land; but if so, that was error, for if the appellants should be held liable at all, it should be for rents and profits received and not for rental value. Exception 24 cannot be sustained by reason of the minority of the plaintiffs, or at least some of them.

The point raised by exception 25 is left open, as that matter should be considered when the Circuit Court passes upon the questions for the determination of which the case will be remanded to that Court.

So, also, as to the point raised by the exception 28.

The case must, therefore, be remanded to the Circuit Court, for the purpose of considering and determining specifically what amount of the purchase money paid by the appellants, or those under whom they claim, was applied to the removal of the burdens resting upon the land as hereinabove stated; whether any of the debts of the testator, which were paid either directly or indirectly out of the proceeds of the sale of the land, were barred by the statute of limitations at the time of the death of the testator, and if so how much; and in this inquiry the burden of proof showing that such debts were thus barred shall be upon the plaintiffs, and also for the purpose of considering and determining the several points left open, as hereinabove stated.

The judgment of this Court is, that the judgment of the Circuit Court, in so far as it is inconsistent with the views herein announced, be reversed, and that the case be remanded to the Circuit Court for the purposes hereinabove indicated.