### 17390

L. R. WYNN and Henry C. Brunson, Co-partners, d/b/a Wynn and Brunson, Respondents, v. Albert H. CONEY and Carlton G. Davies, Co-partners, d/b/a Coney-Davies Lumber Company and Hamptonite Door Manufacturing Company, a Corporation, Appellants.

(102 S. E. (2d) 209)

*Messrs. Hope, Willcox & Cabaniss* and *Hagood, Rivers & Young* of Charleston, and *Hugh O. Hanna,* of Hampton, *for Appellants,*

*Randolph Murdaugh, Esq.,* of Hampton, *for Respondents,*

February 12, 1958.

Moss, Justice.

This action was instituted by L. R. Wynn and Henry C. Brunson, partners, trading as Wynn and Brunson, the respondents herein, against Albert H. Coney and Carlton G. Davies, partners, trading as Coney-Davies Lumber Company, the appellants herein, and Hamptonite Door Manufacturing Company.

The action is one brought for the purpose of recoving the balance due on the purchase price of certain lumber which the respondents assert that they sold and delivered to the

appellants. It was alleged in the complaint that Coney-Davies Lumber Company and Hamptonite Door Manufacturing Company were engaged in business together under some arrangement, the details of which were unknown to the respondents.

The appellants denied that they were engaged in business with Hamptonite Door Manufacturing Company. They likewise denied that the lumber was purchased by them or that such was ever delivered to them.

The case was tried before the Honorable J. Woodrow Lewis, Presiding Judge, with a jury, and resulted in a verdict for the respondents against the appellants, Coney-Davies Lumber Company, in the sum of $6,457.76, and a verdict in favor of the defendant, Hamptonite Door Manufacturing Company.

There was attached to the complaint, and made a part thereof by reference, what purports to be an itemized sworn statement of the account for lumber sold and delivered by the respondents. This itemized statement was admitted in evidence, over the objection of appellants, as an exhibit under the circumstances hereinafter stated. At appropriate stages of the trial the appellants moved for a nonsuit, directed verdict, judgment *non obstante veredicto,* and, in the alternative for a new trial. All of these motions were refused by the trial Judge.

The appellants are before this Court on seventeen exceptions to the judgment of the lower Court. These exceptions pose two questions: (1) Did the Court commit error in admitting in evidence the statement of account attached to the complaint? (2) Was there any competent evidence offered by the respondents on which the Court could correctly refuse the motion of the appellants for a nonsuit, diricted verdict or judgment *non obstante veredicto*?

Attached to the complaint and made a part thereof by reference was a statement of the alleged account for the lumber sold and delivered by the respondents to the appel-

lants. This statement shows that between May 17, 1954 and August 27, 1954, inclusive, that the respondents sold and delivered lumber at a sales price of $11,624.92 to the appellants. The statement also shows credits for $5,167.16, leaving a balance due the respondents of $6,457.76.

Henry C. Brunson, one of the respondents, testified that sometime prior to May 17, 1954 he was called to the offices of Hamptonite Door Manufacturing Company, and at that time had a conference with Albert H. Coney, one of the appellants, and with one Williams, who was the general manager of Hamptonite. He testified that Coney wanted him to cut the lumber and deliver it to Hamptonite. He testified that he agreed to cut the lumber on a weekly basis and make up the tally sheets and turn them into the office. He also testified that Coney asked him to deliver the lumber to Hamptonite and that the appellants would pay the respondents for it. He further testified that he sold the lumber to the appellants and delivered it according to the agreement to the Hamptonite plant. L. J. Williams, the manager of Hamptonite testified in behalf of the respondents and confirmed the testimony of Henry C. Brunson. He testified that the appellants bought the lumber and, in turn, sold it to Hamptonite.

The respondent, Henry C. Brunson, also testified that as lumber was delivered to the appellants a tally sheet was prepared, and on Friday of each week these were turned into the office of Hamptonite, in accordance with the agreement between the parties, for the purpose of getting pay for the lumber so sold and delivered. He further testified that he kept no other records of the transactions and that all records of the amount of lumber delivered by him were turned over to the various parties at the offices of Hamptonite. He further testified that when the appellants did not pay for the lumber, and before suit was brought, that he, with his attorney, went to the offices of Hamptonite and copied from the original records the information contained in the statement attached to the complaint. This witness was questioned

by the Court about the records from which the statement was prepared. We quote:

"The Court: Did you have any records in your possession upon which this account is made up? A. No, sir. What I did with these, I turned the whole thing over to them to get my pay check every Friday morning.

"The Court: You have no original records in your possession upon which that is based? A. No, sir.

"Mr. Rivers: I submit that the best evidence is the record from which this was taken.

Mr. Murdaugh: I have served notice to get it on both Defendants and Mr. Brunson has testified that he turned them over to the Defendants and they bring three days of tallies in.

"Mr. Rivers: I submit that Mr. Brunson cannot testify to this unless he made it himself.

"Q. State whether after you employed me I went to the books with you and

"Mr. Rivers: I submit Counsel should not lead the witness.

"The Court: Yes, don't lead him.

"Q. What was done about how this was made up? A. We went to the records and made it up.

"Q. Who? A. You and I.

"Q. What did you do when we got there? A. We went through them, taken them down and made up this sheet.

"Q. Where were these records? A. In Hamptonite Door Manufacturing Company's office.

"Q. Who elses office was Hamptonite Door Manufacturing Company? A. Mr. Coney's.

"Q. Where was the last time you saw the original papers that this was made up from? A. In that office.

"Q. You said that was the office of Mr. Coney and Hamptonite Door Manufacturing Company? A. Yes, that is the office I had all of my business with."

It thus appears from the testimony that the respondents have none of the original records and that all such were delivered to the appellants. According to the testimony the statement attached to the complaint was prepared from the original records in the possession of either Hamptonite or the appellants. If the records were in the possession of Hamptonite they were there because it was authorized to receive such records by the appellants. The record shows that notices to produce such records were served on the appellants and on Hamptonite, and as a result of such notice some of the daily tally sheets were produced. Since the evidence discloses that the respondents had none of the original records and such daily and weekly tally sheets were sent to the office of the appellants, we think the trial Judge, in the exercise of his discretion, was correct in admitting the statement attached to the complaint under the circumstances revealed by the testimony and the record.

In the case of *Rose v. Winnsboro National Bank,* 41 S. C. 191, 19 S. E. 487, 488, this Court said:

"Exception 5 complains that the judge erred in allowing the witness Elliott to testify to the contents of certain letters, alleged to have been written by the witness to plaintiff, when the same was objected to by her, etc. It appears that written notice had been served upon the plaintiff to produce the original letters of Elliott, but they were not produced. It is true that one notified to produce a paper should be shown to have 'control of it.' But, as Mr. Greenleaf (section 560) says, 'Of this fact very slight evidence will raise a presumption sufficient, where the instrument exclusively belongs to him, and has recently been, or regularly ought to be, in his possession, according to the course of business,' etc."

In the case of *Chiles v. Southern Ry. Co.,* 69 S. C. 327, 48 S. E. 252, 253, this rule was announced:

"There was no error in allowing parol evidence of the contents of the tickets. The tickets were turned over to the superintendent of the Charleston and Western Carolina

Railway, and its general passenger agent testified the accounting department of that company had not been able to find them, and that it was probable they had been destroyed. It is ordinarily a question for the presiding judge to determine, in his discretion, when sufficient proof has been offered of the loss of a paper to warrant parol proof of its contents. The proof of loss in this case seems as strong as the plaintiffs could be expected to offer."

In the case of *Beaty & Co. v. Southern Railway,* 80 S. C. 527, 61 S. E. 1006, 1007, it appears that notice was served upon the Southern Railway to produce the original claim for damages and the letter accompanying same, both of which were filed with the agent of the Railway Company. The defendant did not produce the claim and letter pursuant to such notice. The Court permitted secondary evidence to be offered as to the contents of the claim and the letter, and upon appeal to this Court the judgment of the lower Court was affirmed and it was said:

"Under the law of this state and in accordance with the general rule, where the writing containing or constituting the primary evidence of the fact to be proved is satisfactorily shown to have been lost or destroyed without the fault of the party desiring to prove the fact, secondary evidence becomes admissible. 17 Cyc., 518; *Hunter v. Hunter,* 63 S. C. 78, 41 S. E. 33; *Perry v. Jefferies,* 61 S. C. 292, 39 S. E. 515; *Cook v. Wood,* 1 McCord, 139."

In the case of *Sample v. Gulf Refining Co.,* 183 S. C. 399, 191 S. E. 209, 213, the plaintiff instituted an action against the defendant for the recovery of damages for the wrongful taking and carrying away of certain gasoline. There was a resulting verdict for the plaintiff. The defendant attempted to establish its defense that the respondent was not the owner of the gasoline when it was removed, and offered secondary evidence of the contents of an alleged chattel mortgage covering the gasoline, the original of which respondent's counsel had been given notice to produce. The evidence was excluded and this was assigned as error. The

Court, in passing upon the exception questioning the exclusion of the evidence, said:

"The original of a document is, of course, the best evidence as to its contents, and before the receipt of secondary evidence can be required, it is necessary for the party offering the evidence to make certain preliminary proof to establish the necessity and propriety of the receipt of the secondary evidence in place of the original document; and while the sufficiency of this preliminary proof does not rest in the uncontrolled discretion of the trial judge, as statements in some of the cases seem to imply, yet at least some if not a large measure of discretion in this respect necessarily is vested in the trial judge. *Hobbs v. Beard,* 43 S. C. 370, 21 S. E. 305; *Norris v. Clinkscales,* 47 S. C. 488, 25 S. E. 797; *Uzzell v. Horn,* 71 S. C. 426, 51 S. E. 253; *Atlantic Coast Line R. R. Co. v. Dawes,* 103 S. C. 507, 88 S. E. 286. Obviously, there also must be some proof tending to show the former existence and execution of the original instrument. 22 C. J., 1042; *Howell v. House* (2 Mill, Const.), 9 S. C. L. 80; *Uzzell v. Horn, supra; Vance v. Ferguson,* 101 S. C. 125, 85 S. E. 241."

The case of *W. T. Rawleigh Co. v. Thompson,* 122 S. C. 43, 114 S. E. 702, 703, was an action by the Rawleigh Co. against Thompson, as principal, and two others as guarantors, upon an account of goods sold to Thompson. Upon the trial of the case, the Rawleigh Co. offered in evidence, over objection, an itemized statement showing goods sold and credits given. This itemized statement of account made up by the plaintiff from data in its office was held to be inadmissible as a substitute for the books of original entry. In this same case the Court said that the proof of the goods sold and delivered to Thompson was such as was usually required in the proof of a merchant's account. This court said:

"The evidence may be (1) the testimony of the merchant or his salesman from personal knowledge of the sale and delivery; (2) the introduction of the books of original entry

upon their authentication by the person who made the entries or upon proof of handwriting as in *United Grocery Co. v. J. M. Donnelly & Son,* 93 S. C. 580, 77 S. E. 706, Ann. Cas. 1914D, 489; (3) the admission of the defendant. *Crosland Co. v. Pearson,* 86 S. C. 313, 68 S. E. 625."

We direct attention also to the following additional cases as having some bearing upon the question here raised: *Owens v. Ocean Forest Club, Inc.,* 196 S. C. 97, 12 S. E. (2d) 839; *Bourne v. Maryland Casualty Co.,* 185 S. C. 1, 192 S. E. 605, 118 A. L. R. 1; *Drayton v. Industrial Life & Health Ins. Co.,* 205 S. C. 98, 31 S. E. (2d) 148; *Worth v. Norton,* 60 S. C. 293, 38 S. E. 605; *Thompson Bros. v. Piedmont Mutual Ins. Co.,* 77 S. C. 294, 57 S. E. 848.

The appellants assert that the ruling of the trial Judge should be reversed under the authority of the case of *Zemp Const. Co. v. Harmon Bros. Const. Co.,* 225 S. C. 361, 82 S. E. (2d) 531. We do not think so. It appears in the *Zemp case* that there was admitted as evidence a summary sheet, which had been prepared from original records such as cancelled checks, receipted bills and weekly payroll statements. The original records, from which the summary sheet was prepared, were in the possession of Zemp Const. Co., and even though a number of the original records were in court, they did not support all of the claimed disbursements listed in the exhibit or summary. The original records, of course, would have been the best evidence.

We conclude that there was no error on the part of the trial Judge in admitting as evidence the statement attached to the complaint. We reach this conclusion because it appears from the testimony that the original records of the respondents had been delivered to the appellants or to Hamptonite, pursuant to the directions of the appellants. It further appears that proper notice was given to the appellants and Hamptonite to produce these original records. This they failed to do. We think that the respondents had made the necessary preliminary showing of the necessity and propriety

of offering secondary evidence of the contents of the records in question.

We come now to a consideration of the second question raised by the appellants. This question can be answered by determining whether the Court committed error in refusing the motions made by the appellants for a nonsuit, directed verdict and for judgment *non obstante veredicto.*

We must consider these exceptions in the light of the well-settled rule that in passing upon a motion for nonsuit, directed verdict and for judgment *non obstante veredicto,* that the testimony and all inferences therefrom must be taken most strongly against the defendant and considered in the light most favorable to the plaintiff. *Mullinax v. Great A. & P. Tea Co.,* 221 S. C. 433, 70 S. E. (2d) 911, and the cases therein cited.

The questions raised by these exceptions require an examination of the evidence introduced to support the claim of the respondents. We have heretofore referred to some of this evidence. We briefly recur to such. There is the testimony of Henry C. Brunson, one of the respondents, that he agreed with Albert H. Coney, one of the appellants, and with one L. J. Williams, general manager of Hamptonite that the respondents would cut certain lumber and deliver the same to Hamptonite for the appellants. He further testified that the appellants agreed to pay for such lumber. He also testified that he sold the lumber to the appellants and delivered it according to the agreement to the Hamptonite plant. This testimony was confirmed by L. J. Williams, the manager of Hamptonite. Williams also testified that the appellants bought the lumber and sold it to Hamptonite.

It appears from the record that Henry C. Brunson, one of the respondents, testified as to the sales made by the respondents to the appellants. There was no objection to this testimony. We quote from the transcript:

"Q. Mr. Brunson, you said a minute ago that you were selling the lumber to Coney-Davies Lumber Company, did

Mr. Williams and Mr. Coney tell you what Coney-Davies was going to do with it? A. Yes, in turn they were going to sell it to Hamptonite Door Manufacturing Company to make doors out of. I don't know who.

"Q. How were you, in what way were you to furnish the lumber? A. We cut it, put it in the drykilns, we had a tally-man who tallied the lumber and turned it in every night and I checked the tallies every afternoon.

"Q. At the end of the week what did you do? A. I took the tallies over there and asked them to give me a check for them.

"Q. Over where? A. To the door plant.

"Q. To whom would you give these tallies or sales slips that Mr. Rivers asked about, who did you give them to? A. Different ones took them, a fellow by the name of Mr. Hanley took some of them.

"Q. Who was he? A. I understood he was Production Manger at the Door Plant and they had a man by the name of Mr. Fuller.

"Q. Who did Mr. Coney tell you Fuller was? A. Mr. Fuller was Mr. Coney's man that he sent down there.

"Q. Who else did you give the tallies to? A. Mr. Williams.

"Q. Mr. Brunson as I understood you to say, every day you checked the tally sheets to see what was delivered? A. Yes, sir.

"Q. And at the end of the week you did what with them? A. I took them over to the Door Plant to try to get a check.

"Q. You turned it over to them? A. Yes, sir.

"Q. Who was this understood with when the agreement was made? A. With Mr. Coney and Mr. L. J. Williams.

"Q. Who was to make the bill for the lumber you furnished Coney-Davies Lumber Company? A. They would.

Q. Come here a minute. I show you here which is on the fourth page of the original Complaint, what is that a list of? A. Lumber.

"Q. What kind of lumber, what did you do with this lumber? A. I put it in the drykiln for them.

"Q. Who did you sell it to? A. To Coney-Davies Lumber Company.

"Q. What was the total amount of deliveries made to them? A. Eleven Thousand Six Hundred Twenty-four Dollars and Ninety-two Cents.

Q. How much money have you received from them? A. I received Five Thousand One Hundred Sixty-Seven Dollars and Sixteen cents.

"Q. Which left a balance due you as of August 27, 1954 of what amount? A. Six Thousand Four Hundred Fifty-Seven Dollars and Seventy-six Cents.

"Q. Is that set forth on your verified statement of account? A. Yes, sir.

"Q. State whether it shows what lumber was sold, the footage, the total amount of lumber delivered and the total amount therefor? A. It does."

There was also testimony that each time a delivery of lumber was made to Hamptonite for the appellants a tag was placed on same showing that such lumber was the property of the appellants.

One of the appellants, Albert H. Coney, testified that his firm had nothing to do with the purchase of any lumber from the respondents, except with relation to the lumber that was cut between June 4, 1954 and June 10, 1954. He further testified that his firm had nothing to do with the payments made to the respondents. He denied that his firm entered into any contract with the respondents for the purchase of lumber. This witness, however, did admit that his firm made a payment by check to the respondents in the sum of $1,930.20, but he asserts that he made such payment at the direction of L. J. Williams for lumber sold to Hamptonite. This witness denied any other connection with the respondents and positively asserted that his firm had no contract with them.

We do not consider it necessary to further review the evidence in this case. A careful study of this record convinces us that the testimony presented issues of fact for determination by the jury. It was a question for the jury to determine whether or not the appellants entered into the contract with the respondents for the purchase of the lumber in question. The issue has been determined by the jury adverse to the contention of the appellants. There is evidencce to support the finding of the jury.

The exceptions of the appellants are overruled and the judgment of the lower Court is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., conccur.