**UNITED STATES of America**

v.

**Cecil Tommy FIELDS.**

**No. C/66–452.**

United States District Court
D. South Carolina,
Greenwood Division.

July 20, 1967.

William B. Long, Jr., Asst. U. S. Atty., Greenville, S. C., for plaintiff.

John D. Watkins, Augusta, Ga., for defendant.

HEMPHILL, District Judge.

## ORDER

Defendant, by indictment returned November 14, 1966 was charged [1] by the Grand Jury:

That on or about the 27th day of April, 1966, CECIL TOMMY FIELDS did transport a stolen motor vehicle, that is, a 1966 Chevrolet, VIN 113696N-127168, from New York, State of New York, to McCormick, State of South Carolina, in the Greenwood Division of the District of South Carolina, and he then knew the motor vehicle to have been stolen.

When the case was called for trial on December 13, 1966, defendant's counsel

---

1. 18 U.S.C.A. § 2312. Transportation of stolen vehicles. Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

asked for a continuance to convenience the client and to allow counsel more time for preparation. The motion was granted. The case was called on June 19, 1967 and it was ordered set for disposition on June 21, 1967.

Upon arraignment, defendant entered a plea of Not Guilty, waived trial by jury, and presented demand for special findings of fact as provided by Rule 23 (c)[2] of the Federal Rules of Criminal Procedure. The government did not object. The court heard the testimony, and when it appeared defendant wished to examine an additional witness by the name of Etta Mae Sibert, the court ordered that a subpoena be issued and served. The following day counsel for defendant announced that he had seen her and that she was unable to attend. The court thereafter offered to hold the matter in abeyance so that her deposition could be had by defendant; counsel for defendant expressed a desire to pursue her testimony and the court granted leave to do so. The deposition was not taken, however, and no communication was received by the court from defendant or his counsel within the agreed time, nor, in fact, to date.[3] The court therefore determines that the credible evidence reveals the following:

### SPECIAL FINDINGS OF FACT

1. On April 12, 1966, defendant Fields rented from All Drive Services Limited, at its offices, 122 West 3rd Street, New York, N. Y., the 1966 Chevrolet described in the indictment. He executed a "Daily Rental Form" which had the hour the car was borrowed entered on it as 12 Noon of April 12. The form provided that "Vehicle will be returned no later than—date 4/13—time 12:N." He was given a key to the car and he left.

2. The vehicle was not returned on April 13. On that date a telephone call to All Drive informed them that the vehicle was unsatisfactory and that it had been abandoned at a specific location in Bedford Hills, New York. At some time between April 15 and April 18 All Drive recovered the vehicle from that location. The key furnished to defendant was not in the vehicle, and it has never been returned to or recovered by All Drive.

3. The rental contract reflects a deposit of $35.00, a rate of $5.00 per day and 9 cents per mile. The contract further provides, among other terms, that the lessee agrees "not to remove said vehicle from this state without written consent of Lessor." After its initial recovery of the vehicle from Bedford Hills, All Drive rented the car to others, and it was last seen in New York City, parked on the public street near one of All Drive's rental offices. The company ordinarily used street parking at certain times. It was found to be missing on or about April 27, 1966, and it was reported to the New York Police as stolen.

4. There is no dispute that the vehicle was next seen in McCormick County, South Carolina. Defendant claims that sometime after his initial use of the vehicle, he telephoned Whiting, New York and spoke to an unidentified person with the All Drive Company, and that he obtained permission from the person to take the car from the State. I find this testimony uncorroborated and unworthy of belief. He stated that he later telephoned All Drive from South Carolina and told them the car was in South Carolina; that he was told he would be prosecuted if he did not return the car; that he was thereafter afraid to go back to New York. On April 30, 1966 the vehicle was seen in or near the Fields' yard in McCormick by a Deputy Sheriff of that county, and it was also seen in and

---

2. Rule 23(c) Federal Rules of Criminal Procedure: Trial without a Jury. In a case tried without a jury the court shall make a general finding and shall in addition on request find the facts specially.

3. Defendant was given ten days. Thereafter, absent communication, defendant's privately employed counsel was urged to respond by the court.

about the McCormick area thereafter on various occasions until it was recovered by the FBI on June 29, 1966.

5. Defendant's story is that he rented the car on the 12th for the purpose of driving to McCormick to pick up his wife and then to return with her to New York. He states he arrived in McCormick on April 13. He called a Mr. Rankin, who was allegedly with All Drive: he was referred to another man. He told the latter man that he was down south and that he wanted to stay over the weekend. He offered to send more money. According to Fields, the man told him that under no circumstances would the car be rented for further use by Fields and that the car should be returned immediately. He testified that when he first rented the car on April 12, he was asked how long he wanted the car, was told a week or two, and that if he wished more he could call. He was somewhat nebulous about other calls or attempts to call. He stated that he thereafter went to work for Continental Can Company in Augusta, Georgia and for others at other places. Members of his family sought to corroborate his story of his arrival and stay in South Carolina. He produced supposedly corroborating evidence in the form of paper receipts and the like. This court carefully reviewed this evidence, mindful of the precious liberty of the accused hanging in the balance. The entire spectrum of the accused's evidence was lacking in credibility. This court cannot find truth, as a finding of fact, in any of his contentions.

6. During the period of his stay in McCormick, defendant was advised that a check from Spain, paying him 6000 pesetas had now become available. He borrowed money from a relative to fly, with his wife, to New York City, to collect the check. No effort was made to use the money to return the car. The record reveals no effort to contact All Drive to settle or to make restitution. His excuse for not contacting All Drive is that his lawyers advised against it.

7. The record is void of sufficient evidence to convince this court of the truth of defendant's contentions.

Rule 23(c) requires, in addition to a finding of facts specially, a general finding. This court respectfully reports its

## GENERAL FINDINGS AND CONCLUSIONS OF LAW

■ A. On the credible evidence before it, this court finds defendant Cecil Tommy Fields guilty, beyond a reasonable doubt.

■ B. "The word 'stolen' as used in the Dyer Act includes much more than common law larceny. It encompasses any taking with the intention to convert the vehicle to the use of the taker and wrongfully to deprive the owner of his possessory rights and the benefits of the ownership. Such a taking can occur, though possession is acquired by means of a rental agreement." United States v. Dillinger, 341 F.2d 696 (4th Cir. 1965).

■ "Moreover, it is unnecessary that the defendant's intention be to deprive the owner of the use of the vehicle forever. It is enough that he did not intend to return the automobile, but intended to use it for his own purposes as long as it served his convenience and thereafter to abandon it or dispose of it." Id.

■ "The defendant's intention, when he leased the automobile and when he first transported it in interstate commerce, can be shown by his subsequent conduct." Id.

■ The Dyer Act covers both larceny by trick, where the intent to steal is present at the time of the rental, United States v. Dillinger, 341 F.2d 696 (4th Cir. 1965), and embezzlement, where the intent to steal arises at some later time, United States v. Welborn, 322 F.2d 910 (4th Cir. 1963).

The court is convinced by the evidence that either at the time the auto was rented or shortly thereafter and prior to transporting the auto across state lines, that the defendant formulated the intent to "convert the car to his own use and to wrongfully deprive the owner of his possessory rights and the benefits of ownership."

C. Upon trial of the cause defendant's counsel first objected to introduction of a copy of the rental agreement. The president of All Drive testified he could not locate the original instrument and the copy was allowed. In the recent case of Vaught v. Nationwide Mutual Insurance Company [4] the South Carolina Supreme Court reaffirmed the secondary evidence rule:

> The applicable principles governing the admission of secondary evidence are set forth in Wynn v. Coney, 232 S.C. 346, 102 S.E.2d 209. The following was there quoted with approval from Beaty & Co. v. Southern Railway Co., 80 S.C. 527, 61 S.E. 1006:
>
>> Under the law of this State and in accordance with the general rule, where the writing containing or constituting the primary evidence of the fact to be proved is satisfactorily shown to have been lost or destroyed without the fault of the party desiring to prove the fact, secondary evidence becomes admissible.

Later counsel indicated withdrawal of objection to the evidence.

### DIRECTION

Defendant having been found guilty by the court will present himself for sentence at Greenville, South Carolina, in the Courtroom, United States Courthouse, at 9:30 a. m., July 27, 1967, for imposition of sentence, and for presentation by defendant of such matters as he wishes the court to consider in connection therewith.

And it is so ordered.

---

4. S.C., 156 S.E.2d 627, opinion filed July 12, 1967.